IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
CD LIQUIDATION CO., LLC, f/k/a            :        Case No. 09-13038 (KG)
CYNERGY DATA, LLC, et al.,¹               :
                                          :        Jointly Administered
                                          :
         Debtors.                         :
-------------------------------------------------------x
```

## JOINT PLAN OF LIQUIDATION OF CD LIQUIDATION CO., LLC, CD LIQUIDATION CO. PLUS, LLC, AND CYNERGY DATA HOLDINGS, INC.

NIXON PEABODY LLP
Mark N. Berman
Dennis J. Drebsky
Lee Harrington
437 Madison Avenue
New York, New York  10022
Telephone:  (212) 940-3000
Facsimile:  (212) 940-3111

PEPPER HAMILTON LLP
David B. Stratton
Evelyn J. Meltzer
1313 Market Street, Suite 5100
Wilmington, Delaware 19899
Telephone:  (302) 777-6500
Facsimile:   (302) 421-8390

Counsel for the Debtors and Debtors in Possession

JAGER SMITH P.C.
Bruce F. Smith
Steven C. Reingold
Michael J. Fencer
Brendan C. Recupero
One Financial Center
Boston, MA 02110
Telephone:  (617) 951-0500
Facsimile:  (617) 951-2414

ASHBY & GEDDES. P.A.
Gregory A. Taylor
Karen B. Skomorucha
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
Telephone: (302) 654-1888
Facsimile:  (302) 654-2067

Counsel for the Official Committee of Unsecured Creditors

Dated: ~~November 12,~~ **December 17,** 2010
          Wilmington, DE

---

[1]    By its order dated November 18, 2009, the Bankruptcy Court ordered that the caption in these jointly administered bankruptcy cases be changed to reflect changes to the corporate names of Cynergy Data, LLC and Cynergy Prosperity Plus, LLC agreed to as part of the sale of substantially all of their assets during these chapter 11 cases.

# TABLE OF CONTENTS

Page

**ARTICLE I.** Definitions, Rules of Interpretation, and Computation of Time.................................1

A.        Scope Of Definitions; Rules Of Construction.................................1

B.        Definitions.................................2

C.        Rules of Interpretation.................................11
1.        General        11
2.        Rule of "Contra Proferentum" Not Applicable.................................12

D.        Computation of Time.................................12

**ARTICLE II.** Classification of Claims and Interests.................................12

A.        Introduction.................................12

B.        Unclassified Claims (not entitled to vote on the Plan).................................12
1.        Administrative Claims.................................12
2.        Tax Priority Claims.................................12

C.        Impaired Classes Of Claims And Interests.................................12
1.        Classes 1, 2, 3, 4, 5, 6 and 7.................................12
2.        Class 8        13

D.        Classified Claims And Interests.................................13
1.        Class 1:  Secured Claims of Senior First Lien Lenders Against CD, Holdings or Prosperity        13
2.        Class 2: Secured Claims of Prosperity Lenders Against CD, Holdings or Prosperity....13
3.        Class 3:  Secured Claims of Junior First Lien Lenders Against CD, Holdings or Prosperity.        13
4.        Class 4:  Secured Claims of Second Lien Lenders Against CD, Holdings or Prosperity..13
5.        Class 5: Other Secured Claims Against CD, Holdings or Prosperity.................................13
6.        Class 6: Priority Claims Other Than Tax Priority Claims Against CD, Holdings or Prosperity.        13
7.        Class 7:  General Unsecured Claims Against CD, Holdings or Prosperity.................................13
8.        Class 8:  Interests in CD, Holdings or Prosperity.................................14

**ARTICLE III.** Treatment of Claims and Interests.................................14

A.        Unclassified Claims.................................14
1.        Administrative Claims.................................14
2.        Tax Priority Claims.................................14

B.  Impaired Classes of Claims...........................................................................14
1.  Class 1:  Secured Claims of Senior First Lien Lenders against CD, Holdings and Prosperity          14
2.  Class 2: Secured Claims of Prosperity Lenders against CD, Holdings and Prosperity..15
3.  Class 3:  Secured Claims of Junior First Lien Lender against CD, Holdings and Prosperity          15
4.  Class 4:  Secured Claims of Second Lien Lenders against CD, Holdings and Prosperity..15
5.  Class 5:  Other Secured Claims.......................................................................16
6.  Class 6: Priority Claims Other Than Tax Priority Claims Against CD, Holdings or Prosperity          16
7.  Class 7:  General Unsecured Claims Against CD, Holdings or Prosperity.................16
8.  Class 8:  Interests in CD, Holdings or Prosperity............................................16

**ARTICLE IV.** SUBSTANTIVE CONSOLIDATION/MERGER........................................16

A.  Substantive Consolidation/Merger...................................................................16

B.  Order Granting Substantive Consolidation.........................................................17

**ARTICLE V.** MEANS FOR IMPLEMENTATION OF THE PLAN.................................17

A.  Establishment of the Liquidation Trust.............................................................17
1.  Liquidation Trust Generally...........................................................................17
2.  Funding of the Liquidation Trust.....................................................................18
3.  Liquidation Trustee....................................................................................18
4.  Creditor Representative...............................................................................19
5.  Fees and Expenses of the Liquidation Trust.........................................................20
6.  Reports to be Filed by the Liquidation Trustee.....................................................20
7.  Indemnification........................................................................................20
8.  Tax Treatment..........................................................................................20
9.  Abandonment and Destruction of Documents............................................................21

B.  Corporate Action......................................................................................21
1.  Certificates of Incorporation or Organization.......................................................21
2.  Action          21
3.  Cancellation of the Equity Securities; Agents for Secured Claims..................................2221

C.  No Revesting Of Assets................................................................................22

D.  Trust Accounts........................................................................................22
1.  Liquidation Trust Accounts............................................................................22
2.  Liquidation Trust Expense Account....................................................................2322

E.  Preservation of Rights of Action.....................................................................2322

F.  Exclusivity Period....................................................................................23

G.    Effectuating Documents; Further Transactions ............................................... 23

H.    Exemption From Certain Transfer Taxes ................................................... ~~24~~**23**

**ARTICLE VI.** ACCEPTANCE OR REJECTION OF THE PLAN ............................... ~~24~~**23**

A.    Classes Entitled To Vote .......................................................................... ~~24~~**23**

B.    Acceptance By Impaired Classes ............................................................. 24

**ARTICLE VII.** PROVISIONS GOVERNING DISTRIBUTIONS ............................... 24

A.    Distributions For Claims Allowed As Of The Effective Date ................... 24

B.    Interest On Claims .................................................................................... 24

C.    Distributions ............................................................................................. ~~25~~**24**

D.    Distributions of Funds Held in Cure Escrow Account .............................. ~~25~~**24**

E.    Compensation and Reimbursement for Services Related to Distributions .... ~~25~~**24**

F.    Means Of Cash Payment .......................................................................... 25

G.    Delivery Of Distributions ......................................................................... 25

H.    Fractional Dollars; *De Minimis* Distributions ......................................... 26

I.    Withholding And Reporting Requirements ............................................... 26

J.    Setoffs ~~27~~**26**

K.    Rejection ................................................................................................... ~~27~~**26**
1.    Status of Remaining Executory Contracts ............................................... ~~27~~**26**
2.    Bar Date for Filing Claims for Rejection Damages .................................. 27

**ARTICLE VIII.** PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS ............................................................................. ~~28~~**27**

A.    Objection Deadline; Prosecution Of Objections ...................................... ~~28~~**27**

B.    Estimation of Claims ................................................................................ ~~28~~**27**

C.    No Distributions Pending Allowance ....................................................... 28

D.    Adjustment to Claims and Interests Without Objection ........................... 28

E.    Disallowance of Claims or Interests ......................................................... ~~29~~**28**

F.     No New Claims................................................................................2928

G.     Offer of Judgment...........................................................................29

H.     Distributions After Allowance......................................................29
1.     Allowed Administrative Expenses and Allowed Priority Claims.........29
2.     All other Allowed Claims..............................................................3029

I.     Priority Unsecured and General Unsecured Claims.....................3029

J.     Compliance with Tax Requirements/Allocations........................3029

K.     No Release of Liens........................................................................30

**ARTICLE IX.** CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN................................................................................3130

A.     Conditions To Confirmation..........................................................3130

B.     Conditions To Consummation........................................................3130

C.     Substantial Consummation............................................................3231

D.     Waiver Of Conditions....................................................................3231

**ARTICLE X.** MODIFICATIONS AND AMENDMENTS............................32

**ARTICLE XI.** RETENTION OF JURISDICTION..................................3332

**ARTICLE XII.** MISCELLANEOUS PROVISIONS..................................34

A.     Bar Dates For Certain Claims........................................................34
1.     Administrative Claims...................................................................34
2.     Administrative Ordinary Course Liabilities................................3534

B.     Payment Of Statutory Fees............................................................3534

C.     Severability Of Plan Provisions.....................................................3534

D.     Successors And Assigns..................................................................35

E.     Committee.......................................................................................35

F.     Exculpation And Limitation Of Liability......................................3635

G.     Permanent Injunction.....................................................................36

H.     Debtors' Releases...........................................................................3736

I.      Binding Effect ........................................................................... ~~38~~**37**

J.      Revocation, Withdrawal, Or Non-Consummation ........................... ~~38~~**37**

K.      Plan Supplement ...................................................................... ~~38~~**37**

L.      Notices ....................................................................................... 38

M.     Indemnification Obligations ......................................................... ~~40~~**39**

N.     Prepayment ................................................................................ ~~40~~**39**

O.     Term Of Injunctions Or Stay ........................................................ ~~40~~**39**

P.     No Admissions ............................................................................ 40

Q.     Governing Law ........................................................................... 40

R.     Incorporation of Settlement Order ................................................. ~~41~~**40**

**ARTICLE XIII.** Confirmation Request ................................................. ~~41~~**40**

## TABLE OF EXHIBITS[2]

| Exhibit | Name |
|---------|------|
| A | Liquidation Trust Agreement |

---

[2] All exhibits to this Plan will be filed with the Bankruptcy Court no later than fifteen (15) days before the Confirmation Hearing (as defined herein). The Plan Proponents jointly reserve the right to amend, modify, supplement, restate or withdraw the exhibits after they are filed with the Bankruptcy Court.

# INTRODUCTION

CD Liquidation Co., LLC, f/k/a Cynergy Data, LLC, Cynergy Data Holdings, Inc., CD Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC (collectively, the "Debtors") and the Official Committee of Unsecured Creditors hereby propose the following liquidation plan (the "Plan") for the resolution of the outstanding creditor claims against and equity interests in the Debtors.  Reference is made to the Disclosure Statement (as that term is defined herein), distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties, results of operations, risk factors, a summary and analysis of the Plan and certain related matters.

These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Court.  The Plan contemplates and moves for the substantive consolidation of the Debtors for voting and distribution purposes pursuant to Sections 105 and 1123 (a)(5)(C) of the Bankruptcy Code (as that term is defined herein).

All holders of Claims and Interests (as such terms are defined herein) are encouraged to read the Plan and the accompanying solicitation materials in their entirety before voting to accept or reject the Plan.  No materials other than the accompanying solicitation materials and any exhibits and schedules attached thereto or referenced therein have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.  Each of the Debtors and the Committee are the proponents of this Plan with respect to each Debtor within the meaning of Section 1129 of the Bankruptcy Code.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article X of this Plan, each Debtor and the Committee jointly reserve the right to alter, amend, modify, revoke or withdraw this Plan with respect to each Debtor prior to its substantial consummation.

## ARTICLE I.

## DEFINITIONS, RULES OF INTERPRETATION,
## AND COMPUTATION OF TIME

### A.      Scope Of Definitions; Rules Of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number.  The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B.      Definitions

a.      "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority

pursuant to Section 507(a)(2) of the Bankruptcy Code and incurred prior to the Effective Date, including, but not limited to (a) Professional Fee Claims, (b) Committee Member Expenses, and (c) all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

b.  "Allowed" means when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

c.  "Allowed Administrative Claims and Allowed Priority Claims Reserve" means Cash reserved by the Debtors and transferred to the Liquidation Trust to fund payment in full of all Administrative Claims and Priority Claims that have not been Allowed and paid in full as of the Effective Date, but does not include administrative claims or priority claims that have been withdrawn or disallowed.

d.  "Allowed Class . . . Claim" means a Claim or any portion thereof in the particular Class described  (a) as to which no objection to allowance or request for estimation has been interposed before the expiration of the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or is listed on the Schedules as liquidated, non-contingent and undisputed, (b) as to which any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of the Debtors, and the amount thereof are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court, or (e) that is expressly allowed in the Plan.

e.  "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Article XII.A of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors (1) have not interposed a timely objection or (2)have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, or has been denied by a Final Order.

f.  "Allowed Class . . .Interest" means an Interest in the particular Class described (a) that has been allowed by a Final Order, (b) for which (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or (c) that is expressly allowed in the Plan.

g.  "APA" means the Asset Purchase and Sale Agreement entered into between and among the Debtors and the Purchaser dated August 26, 2009 together with all schedules and exhibits thereto.

h.  "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

i.  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases.

j. "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as now in effect or hereafter amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

k. "Bar Date(s)" means the applicable bar date by which a proof of Claim, Interest or request for payment of Administrative Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

l. "Bar Date Order" means the order of the Bankruptcy Court dated December 18, 2009 establishing the Bar Date for filing in the Chapter 11 Cases proofs of Claim, as the same may be amended, modified or supplemented.

m. "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

n. "Cash" means legal tender of the United States or equivalents thereof.

o. "Causes of Action" means claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, whether existing on the Petition Date or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence in any way relating to any Debtor or the Plan, including without limitation, Recovery Actions, and any and all claims asserted on behalf of the Debtors and their Estates on or prior to the Effective Date.

p. "CD" means CD Liquidation Co., LLC, f/k/a Cynergy Data, LLC.

q. "CD Interests" means the membership interests in CD owned by Holdings.

r. "Chapter 11 Cases" means the jointly administered bankruptcy cases of the Debtors commenced under Chapter 11 of the Bankruptcy Code captioned "CD Liquidation Co., LLC, f/k/a Cynergy Data LLC" (Case No. 09-13038 (KG)).

s. "Chief Restructuring Officer" shall mean Charles M. Moore.

t. "Claim" means a claim against one of the Debtors, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

u. "Claims Agent" means that entity designated to manage the receipt and retention of proofs of claims and related duties.

v.        "<u>Class</u>" means a category of holders of Claims or Interests, as described in Article II below.

w.        "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed on September 11, 2009 pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

x.        "<u>Committee Member Expenses</u>" means the reasonable expenses of the members of the Committee authorized pursuant to Section 503(b)(3)(F) of the Bankruptcy Code.

y.        "<u>Confirmation</u>" means entry by the Bankruptcy Court of the Confirmation Order.

z.        "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Cases by the clerk of the Bankruptcy Court within the meaning of Bankruptcy Rules 5003 and 9021.

aa.       "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

bb.       "<u>Confirmation Order</u>" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

cc.       "<u>Consummation</u>" means the occurrence of the Effective Date.

dd.       "<u>Creditor</u>" means any Person who holds a Claim against one of the Debtors.

ee.       "<u>Creditor Representative</u>" shall have the meaning set forth in the Liquidation Trust Agreement.  The Creditor Representative shall be initially selected in the manner set forth in the Liquidation Trust Agreement prior to the commencement of the Confirmation Hearing.

ff.       "<u>Cure Escrow Account</u>" means the funds currently on deposit with Wilmington Trust Company, as Escrow Agent, pursuant to the Sale Order entered by the Bankruptcy Court on October 9, 2009 and the Escrow Agreement dated October 26, 2009 by and between Cynergy Data, LLC as Seller and Wilmington Trust Company, as Escrow Agent.

gg.       "<u>Debtors</u>" means CD, Holdings and Prosperity including in their capacity as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

hh.       "<u>Disclosure Statement</u>" means the written disclosure statement, dated September 27, 2010 as amended, supplemented, or modified from time to time that relates to the Plan and that is prepared and distributed in accordance with Sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

ii.       "<u>Disputed Claim</u>" or "<u>Disputed Interest</u>" means any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which

has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or a Final Order, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed, (c) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, (d) that is disputed in accordance with the provisions of this Plan, or (e) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; *provided, however*, that for purposes of determining whether a particular Claim or Interest is a Disputed Claim or Disputed Interest prior to the expiration of any period of limitation fixed for the interposition by the Debtors of objections to the allowance of Claims or Interests, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be treated as a Disputed Claim or Disputed Interest, respectively.

jj.     "Distribution Date" until Classes 1, 2, and 3 have been paid in full means the last Business Day of each month following the Initial Distribution Date; after Classes 1 and 2 have been paid in full, it means the last Business Day of the month following the end each calendar quarter.

kk.     "Distribution Reserve" means the reserve established and maintained by the Liquidation Trustee into which the Liquidation Trustee shall deposit the amount of Cash that would have been distributed on each Distribution Date to holders of (a) Disputed Claims, or (b) contingent liquidated Claims, as if such Claims had been Allowed Claims on the Distribution Date, pending (i) the allowance of such Claims, (ii) the estimation of such Claims for purposes of allowance or (iii) the realization of the contingencies, and (c) unliquidated Claims, as if such Claims had been liquidated on the Distribution Date.

ll.     "Dymas" means Dymas Funding Company, LLC.

mm.     "Effective Date" means the Business Day on which all of the conditions set forth in Article IX.B hereof have been satisfied or waived as provided in Article IX.D hereof and which has been designated by the Debtors as the effective date of the Plan.

nn.     "Equity Securities" means, collectively, the CD Interests, Holdings Interests and Prosperity Interests.

oo.     "Estates" means as to each Debtor the estate created for the Debtor in its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

pp.     "Face Amount" means (a) when used in reference to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

qq.    "Final DIP Order" means that certain Final Order (I) Authorizing Use of Cash Collateral, (II) Authorizing Postpetition Financing, (III) Granting Senior Priming Liens and Superpriority Claims, and (IV) Granting Adequate Protection to the Prepetition Secured Parties entered by the Bankruptcy Court on October 16, 2009, as it has from time to time since been amended.

rr.    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

ss.    "Financing Agreements" means, collectively (a) the First Lien Credit Agreement, (b) the Prosperity Credit Agreement, (c) the Second Lien Credit Agreement, (d), each other guaranty, security agreement, pledge agreement, intercreditor agreement, subordination agreement or other document entered into pursuant to each of the foregoing (a), (b) and/or (c), and (e) each other agreement that creates or purports to create or perfect a Lien in favor of any one or more of the Lenders.

tt.    "First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement dated as of August 1, 2008, as amended, with Comerica Bank as Agent and Co-Lead Arranger and Dymas Funding Company, LLC as Co-Lead Arranger, together with all security agreements, pledge agreements, intercreditor agreements, subordination agreements, guaranties or other documents entered into pursuant thereto.

uu.    "General Unsecured Claim" means, collectively, a Claim against any Debtor that is not an Administrative Claim, a Priority Claim or a Secured Claim.

vv.    "Holdings" means Cynergy Data Holdings, Inc.

ww.    "Holdings Interests" means the shares of stock in Holdings.

xx.    "Holder" means the holder of any Claim or Interest.

yy.    "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

zz.    "Initial Distribution Date" means the date, occurring on or as soon as practicable after the Effective Date, upon which the initial distributions are made by the Liquidation Trustee to Holders of Allowed Administrative Claims, other Priority Claims, and/or Classes 1, 2, 3, 4 or 5 Claims.

aaa.    "Interest" means (a) the legal, equitable, contractual and other rights of any Person with respect to equity securities of any Debtor and (b) the legal, equitable, contractual or other rights of any Person to acquire or receive any of the foregoing.

bbb.    "Junior First Lien Lenders" means, collectively, all lenders defined as the "Term Loan B Banks" in the First Lien Credit Agreement.

ccc.    "Lenders" means the Senior First Lien Lenders, the Prosperity Lenders, the Junior First Lien Lenders, and the Second Lien Lenders.

ddd.    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

eee.    "Liquidation Trust" means the trust established pursuant to the Liquidation Trust Agreement to, among other things, hold the Liquidation Trust Assets and make distributions on account of Allowed Claims pursuant to Article VII.

fff.    "Liquidation Trust Account" means the Liquidation Trust Account established in accordance with the Liquidation Trust Agreement.

ggg.    "Liquidation Trust Agreement" means the Liquidation Trust Agreement.

hhh.    "Liquidation Trust Assets" means all assets and property of every kind and nature, owned by any of the Debtors as of the Effective Date or subsequently acquired by any of them, including, without limitation, all property of Estates, all Causes of Action, all proceeds from any sale or other disposition of any such asset, and any interest in any insurance policies or proceeds thereof, but excluding Settlement Escrowed Funds.  Without limiting the forgoing, the Liquidation Trust Assets include interests in i) any funds remaining in the Cure Escrow Account  other than Settlement Escrowed Funds and ii) the Senior Subordinated Promissory Note issued by Cynergy Operations LLC dated October 26, 2009 in the principal amount of $14 million and any and all payments thereafter or other proceeds thereof.

iii.    "Liquidation Trust Expense Account" means the trust account established pursuant to Article V.D.1 to fund the payment of the Liquidation Trust Expenses.

jjj.    "Liquidation Trust Expenses" means, to the extent provided for under the budget approved by the Agent for the Senior First Lien Lenders, any and all reasonable fees, costs and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any person, Entity or professional engaged by the Liquidation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including, without limitation, any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

kkk.    "Liquidation Trustee" means the Liquidation Trustee designated under the Liquidation Trust Agreement; provided, that Charles M. Moore will be the initial Liquidation Trustee commencing on the Effective Date.

lll.    "Net Liquidation Trust Proceeds" means the cash proceeds from the liquidation of the Liquidation Trust Assets, less the reasonable costs and expenses, subject to the budget approved by the Agent for the Senior First Lien Lenders, approved in accordance with

the provisions of the Liquidation Trust arising from or relating to the distribution of such assets pursuant to the terms of the Liquidation Trust Agreement.

mmm. "Person" means an individual, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agreed or political subdivision thereof) or other entity of any kind.

nnn. "Petition Date" means September 1, 2009, the date on which each of the respective Debtors filed their respective voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code.

ooo. "Plan" means this chapter 11 liquidation plan for the Debtors and all exhibits annexed hereto or referenced herein, as the same may be amended, modified or supplemented from time to time.

ppp. "Plan Proponents" means, collectively, each of the Debtors and the Committee.

qqq. "Plan Supplement" means the compilation of documents and forms of documents specified in the Plan which will be filed with the Bankruptcy Court prior to the Confirmation Hearing.

rrr. "Priority Claim" means a Claim that is entitled to priority pursuant to Section 507 of the Bankruptcy Code.

sss. "Professional" means any professional (a) employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

ttt. "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services after the Petition Date and prior to and including the Effective Date.

uuu. "Pro Rata" means, at any time, the proportion that the Face Amount of a Claim or Interest, as applicable, in a particular Class bears to the aggregate Face Amount of all Claims or all Interests (including Disputed Claims and Interests) in such Class, unless the Plan provides otherwise.

vvv. "Prosperity" means CD Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC.

www. "Prosperity Credit Agreement" means that certain Credit Agreement dated as of September 20, 2007, as amended, with Comerica Bank as Agent, together with all security agreements, pledge agreements, intercreditor agreements, subordination agreements or other documents entered into pursuant thereto.

xxx. "Prosperity Lenders" means all lenders under the Prosperity Credit Agreement.

yyy. "Prosperity Interests" means the membership interests in Prosperity owned by CD.

zzz. "Purchaser" means Cynergy Holdings, LLC and Cynergy Data LLC, the Buyers under the APA.

aaaa. "Recovery Actions" means, collectively and individually, preference actions, fraudulent conveyance actions, rights of setoff and other claims or causes of action under Sections 510, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

bbbb. "Reorganization Parties" means the Committee, each of the members of the Committee, the Chief Restructuring Officer, each Lender (all of the foregoing solely in their respective capacities), each of the Debtors' Professionals and each of the Committee's Professionals, and as to the Lenders and the Committee members, their respective members, managers, officers, directors, employees, advisors, attorneys, representatives or agents or any of their successors or assigns, each in their capacity as such, but, for the avoidance of doubt, does not include any one or more of the Debtors or of their respective members, managers, officers (other than the Chief Restructuring Officer), directors, employees, advisors, or attorneys (other than Debtors' Professionals), representatives or agents.

cccc. "Sale Order" means Order dated October 9, 2009 authorizing and Approving (A) the Sale of the Transferred Assets free and clear of liens, claims and encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and all exhibits thereto and docketed as #258.

dddd. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b) by the Debtors as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

eeee. "Second Lien Credit Agreement" means that certain Financing Agreement dated as of November 15, 2007 with Dymas Funding Company, LLC as Agent, together with all security agreements, pledge agreements, intercreditor agreements, subordination agreements, guaranties or other documents entered into pursuant thereto.

ffff. "Second Lien Lenders" means all lenders under the Second Lien Credit Agreement.

gggg. "Secured Claim" means a Claim that is secured by a security interest in or Lien upon property, or the proceeds of the sale of such property, in which the Debtors have an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such Interest or Lien as determined by this Plan, a Final Order of the

Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Holder of such Claim.

hhhh. "Senior First Lien Lenders" means, collectively, all lenders defined as the "Revolving Credit Banks" and "Term Loan A Banks" and all lenders which are "Banks" that entered into a "Hedging Transaction" in connection with the "Revolving Credit" and/or "Term Loan A" as such terms are defined in the First Lien Credit Agreement.

iiii. "Settlement Escrow Account" means the account established to hold the Settlement Escrowed Funds pursuant to the Settlement Order.

jjjj. "Settlement Escrowed Funds" means funds in the Cure Escrow Account transferred or to be transferred into the Settlement Escrow Account in the amount of $20,005,430.45 less amounts released from the Cure Escrow Account pursuant to orders of the Bankruptcy Court.

kkkk. "Settlement Order" means the order of the Bankruptcy Court dated September 13, 2010, approving the Settlement Term Sheet, docketed as #935.

llll. "Settlement Term Sheet" means that certain Settlement Term Sheet dated June 2, 2010 attached to the Motion for an Order Approving, Pursuant to Section 105(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 9019, the Settlement Between and Among the Debtors, Harris, N.A., Moneris Solutions, Inc., Term B Parties and Second Lien Parties, Term A Parties, Cynergy Holdings, LLC and Cynergy Data, LLC Regarding Reconciliation of Amounts Related to the Rolling Reserve Funds and For Certain Related Relief filed in the Chapter 11 Cases, and docketed as #863, as modified, supplemented and amended by the Settlement Order, and as may be further modified, supplemented and amended from time to time.

mmmm. "Substantive Consolidation Order" means the order, or provisions of the Confirmation Order, substantively consolidating the Chapter 11 Cases as provided in Article IV of the Plan.

nnnn. "Taxes" means (a) any income, alternative or add-on minimum, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

oooo. "Trust Accounts" means the Liquidation Trust Account, the Liquidation Trust Expense Account and any other trust account established in accordance with the Liquidation Trust Agreement.

pppp. "Unimpaired Claim" means a Claim that is not Impaired.

-10-

## C.    Rules of Interpretation

### 1.    General

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply (other than Section 102(5) of the Bankruptcy Code).

#13222612 v45

### 2. Rule of "Contra Proferentum" Not Applicable

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Committee, and certain other Creditors and constituencies.  Each of the foregoing was represented by independent counsel of its choice who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto.  Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentum*" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, or any exhibit, contract, instrument, release, indenture, or other agreement or document generated in connection therewith.

### D. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.

## CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Introduction

All Claims and Interests, except for Administrative Claims and other Priority Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims entitled to priority over General Unsecured Claims, including Administrative Claims and other Priority Claims, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that a Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

### B. Unclassified Claims (not entitled to vote on the Plan)

#### 1. Administrative Claims

#### 2. Tax Priority Claims

### C. Impaired Classes Of Claims And Interests

#### 1. Classes 1, 2, 3, 4, 5, 6 and 7

Classes 1, 2, 3, 4, 5, 6 and 7 are Impaired and are entitled to vote on the Plan.

-12-

### 2. Class 8

Class 8 is Impaired but is not entitled to vote on the Plan.

## D. Classified Claims And Interests

### 1. Class 1: Secured Claims of Senior First Lien Lenders Against CD, Holdings or Prosperity

Class 1 consists of all Allowed Secured Claims of Senior First Lien Lenders against CD, Holdings or Prosperity.

### 2. Class 2: Secured Claims of Prosperity Lenders Against CD, Holdings or Prosperity

Class 2 consists of Allowed Secured Claims of the Prosperity Lenders against CD, Holdings or Prosperity.

### 3. Class 3: Secured Claims of Junior First Lien Lenders Against CD, Holdings or Prosperity.

Class 3 consists of Allowed Secured Claims of Junior First Lien Lenders against CD, Holdings or Prosperity.

### 4. Class 4: Secured Claims of Second Lien Lenders Against CD, Holdings or Prosperity.

Class 4 consists of all Allowed Secured Claims of Second Lien Lenders against CD, Holdings or Prosperity.

### 5. Class 5: Other Secured Claims Against CD, Holdings or Prosperity.

Class 5 consists of all Allowed Secured Claims against CD, Holdings or Prosperity other than those classified in any of Classes 1, 2, 3 or 4.

### 6. Class 6: Priority Claims Other Than Tax Priority Claims Against CD, Holdings or Prosperity.

Class 6 consists of Unsecured Claims entitled to Priority, including employee wage claims, other than Tax Priority Claims.

### 7. Class 7: General Unsecured Claims Against CD, Holdings or Prosperity.

Class 7 consists of all Allowed General Unsecured Claims against CD, Holdings or Prosperity.

8. **Class 8: Interests in CD, Holdings or Prosperity.**

Class 8 consists of all Interests in CD, Holdings or Prosperity.

## ARTICLE III.

## TREATMENT OF CLAIMS AND INTERESTS

**A. Unclassified Claims**

**1. Administrative Claims**

Except as otherwise provided for herein, and subject to the requirements of Article XII.A. hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between the applicable Debtor and the Holder of such Administrative Claim, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which the applicable Debtor and such Holder shall have agreed upon in writing.

**2. Tax Priority Claims**

On, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date such Tax Priority Claim becomes an Allowed Tax Priority Claim, each Holder of an Allowed Tax Priority Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Tax Priority Claim (a) Cash equal to the unpaid portion of such Allowed Tax Priority Claim or (b) such other treatment as to which the applicable Debtor and such Holder shall have agreed upon in writing; *provided* that no Holder of an Allowed Tax Priority Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Petition Date with respect to or in connection with such Allowed Tax Priority Claim.

**B. Impaired Classes of Claims**

**1. Class 1: Secured Claims of Senior First Lien Lenders against CD, Holdings and Prosperity**

Comerica Bank, as agent for the Senior First Lien Lenders, is the agent for the Holders of the Class 1 Claims. It will receive for such Allowed Secured Claims of Senior First Lien Lenders against CD, Holdings and Prosperity, all of the Net Liquidation Trust Proceeds until such Claims have been paid in full. The entire Claim as filed is Allowed without offset, counterclaim or any defense whatsoever, as a fully secured claim under Section 506(a) of the Bankruptcy Code entitled to interest and all costs and expenses, including attorney fees, as provided by the Financing Agreements. Without limitation, the waivers, discharges and releases provided to the

-14-

Senior First Lien Lenders under the Final DIP Order are ratified and confirmed as of the Effective Date.

**2.    Class 2: Secured Claims of Prosperity Lenders against CD, Holdings and Prosperity**

Comerica Bank, as agent for the Prosperity Lenders, is the agent for the Holders of the Class 2 Claims.  After irrevocable payment in full of the Claims in Class 1, it will receive for such Allowed Secured Claims of Prosperity Lenders against CD, Holdings and Prosperity all of the Net Liquidation Trust Proceeds, until such Claims have been paid in full.  The entire Claim is Allowed without offset, counterclaim or any defense whatsoever, as a fully secured claim under Section 506(a) of the Bankruptcy Code entitled to interest and all costs and expenses, including attorney fees, as provided by the Financing Agreements.  Without limitation, the waivers, discharges and releases provided to the Prosperity Lenders under the Final DIP Order are ratified and confirmed as of the Effective Date.  After irrevocable payment in full of the Claims in Class 1, the Prosperity Lenders succeed to all of the consent and approval rights accorded to the First Lien Lenders under this Plan and the Liquidation Trust Agreement.

**3.    Class 3:  Secured Claims of Junior First Lien Lender against CD, Holdings and Prosperity**

Dymas, as agent for the Junior First Lien Lenders, is the agent for the Holders of the Secured Claims of the Junior First Lien Lenders against CD, Holdings and Prosperity. After irrevocable payment in full of the Claims in Class 1 and 2, it will receive all of the Net Liquidation Trust Proceeds until such Claims have been paid in full.  The entire Claim as filed is Allowed without offset, counterclaim or any defense whatsoever, as a fully secured claim under Section 506(a) of the Bankruptcy Code entitled to interest and all costs and expenses, including attorney fees, as provided by the Financing Agreements.  Without limitation, the waivers, discharges and releases provided to the Junior First Lien Lenders under the Final DIP Order are ratified and confirmed as of the Effective Date.  After irrevocable payment in full of the Claims in Classes 1 and 2, the Junior First Lien Lenders succeed to all of the consent and approval rights accorded to the First Lien Lenders under this Plan and the Liquidation Trust Agreement.

**4.    Class 4:  Secured Claims of Second Lien Lenders against CD, Holdings and Prosperity**

Dymas, as agent for the Second Lien Lenders, is the Holder of the Class 4 Secured Claims of the Second Lien Lenders against CD, Holdings and Prosperity. After irrevocable payment in full of the Claims in Classes 1, 2 and 3, it will receive all of the Net Liquidation Trust Proceeds until such Claims have been paid in full.  The entire Claim as filed is Allowed without offset, counterclaim or any defense whatsoever, as a fully secured claim under Section 506(a) of the Bankruptcy Code entitled to interest and all costs and expenses, including attorney fees, as provided by the Financing Agreements.  Without limitation, the waivers, discharges and releases provided to the Junior First Lien Lenders under the Final DIP Order are, under the confirmed Plan, also provided to the Second Lien Lenders as of the Effective Date.  After irrevocable payment in full of the Claims in Classes 1, 2 and 3, the Junior First Lien Lenders succeed to all

-15-

of the consent and approval rights accorded to the First Lien Lenders under this Plan and the Liquidation Trust Agreement.

### 5. Class 5: Other Secured Claims

To the extent there are Secured Claims against the assets of either CD, Holdings or Prosperity other than the Secured Claims set forth in Classes 1, 2, 3 or 4, such other Allowed Secured Claims shall be paid from any Net Liquidation Trust Proceeds derived from the collateral that secures such other Allowed Secured Claims after payment in full of the Allowed Secured Claims in Classes 1, 2, 3 and 4.

### 6. Class 6: Priority Claims Other Than Tax Priority Claims Against CD, Holdings or Prosperity

Each Holder of a Class 6 Priority Claim Other Than Tax Priority Claims against CD, Holdings or Prosperity will receive, in full satisfaction settlement, release, and discharge and in exchange for such Claim, its Pro Rata share of the Net Liquidation Trust Proceeds after all Secured Claims (Classes 1, 2, 3, 4 and 5) have been paid in full. The Net Liquidation Trust Proceeds will be distributed to the Holders of Class 6 Claims pursuant to the terms of the Liquidation Trust Agreement.

### 7. Class 7: General Unsecured Claims Against CD, Holdings or Prosperity

Each Holder of a Class 7 Allowed Unsecured Claim against CD, Holdings or Prosperity will receive, in full satisfaction, settlement, release, and discharge and in exchange for such Claim, its Pro Rata share of the Net Liquidation Trust Proceeds after all Secured Claims (Classes 1, 2, 3, 4 and 5) and Class 6 Priority Claims Other Than Tax Priority Claims have been paid in full. The Net Liquidation Trust Proceeds will be distributed to the Holders of Class 7 Claims pursuant to the terms of the Liquidation Trust Agreement.

### 8. Class 8: Interests in CD, Holdings or Prosperity

The Holders of the Interests in CD, Holdings and/or Prosperity shall receive no distribution on or on account of such Interests and all such Equity Interests shall be cancelled. The Holders of the Interests are deemed to reject the Plan.

## ARTICLE IV.

## SUBSTANTIVE CONSOLIDATION/MERGER

### A. Substantive Consolidation/Merger

In accordance with Section 1123(a)(5)(C) of the Bankruptcy Code, the Plan contemplates and is predicated upon entry of the Substantive Consolidation Order, which shall effect the merger or substantive consolidation of the Chapter 11 Cases into a single chapter 11 case solely for the purposes of all actions associated with confirmation and consummation of the Plan. On the Confirmation Date or such other date as may be set by a Final Order of the Court, but subject to

the occurrence of the Effective Date: (i) all Intercompany Claims by and among the Debtors shall be eliminated; (ii) all assets and liabilities of the Debtors shall be merged or treated as though they were merged; (iii) all Claims based upon guarantees of collection, payment or performance made by one or more Debtors as to the obligations of another Debtor shall be disregarded and any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iv) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; and (v) each and every Claim filed in the individual Reorganization Case of any of the Debtors shall be deemed filed against the consolidated Debtors in the consolidated Chapter 11 Cases and shall be deemed a single obligation of all of the Debtors under the Plan on and after the Confirmation Date; provided, however, that nothing herein shall affect the obligations of the Debtors under the Plan.

## B.  Order Granting Substantive Consolidation

Unless substantive consolidation has been approved by a prior order of the Court, this Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases. Unless an objection to substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before the objection date fixed by the Court, the Substantive Consolidation Order (which may be the Confirmation Order) may be entered by the Court. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Court, which hearing may, but need not, coincide with the Confirmation Hearing.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.  Establishment of the Liquidation Trust

As of the Effective Date, the Liquidation Trust Assets will be transferred by the Debtors to and vest in the Liquidation Trust, subject to the Liens that secure the Secured Claims and the terms and conditions of this Plan. On the Initial Distribution Date, the Liquidation Trustee will pay in full all Allowed Administrative Claims and Allowed Priority Claims and will establish the Allowed Administrative Claims and Allowed Priority Claims Reserve. The Liquidation Trustee will pay in full each Administrative Claim and each Priority Claim as, if and when such Claim is Allowed.

The Professionals employed by the Debtors or the Committee shall be entitled to reasonable compensation and reimbursement of actual and necessary expenses post-Effective Date for the preparation, filing, and prosecution of final fee applications, upon the submission of invoices to the Liquidation Trustee.

### 1.  Liquidation Trust Generally

On or prior to the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all distributions to Holders of Allowed Claims in

-17-

accordance with the terms of the Plan and otherwise implementing the Plan and administering the Debtors' Estates. In furtherance of the foregoing, the trust shall be created, pursuant to which the Liquidation Trustee shall hold the Liquidation Trust Assets. On the Effective Date, the Liquidation Trust Assets shall be transferred to, and vest in, the Liquidation Trust.

### 2.  Funding of the Liquidation Trust

On or prior to the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement and this Plan. The Liquidation Trust will be funded in accordance with the terms of the Liquidation Trust Agreement with the respective Liquidation Trust Assets or the proceeds thereof.

### 3.  Liquidation Trustee

The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trustee shall be authorized to investigate, prosecute, litigate and compromise any Cause of Action and shall have standing as a representative of the Estates to pursue any Causes of Action and objections to Claims, whether initially filed by or on behalf of the Debtors, the Debtors' Estates, or as may be filed by the Liquidation Trust, and may assert any claims and defenses that may otherwise have been asserted by a trustee under the Bankruptcy Code. The Liquidation Trustee shall be vested with all rights, powers and benefits afforded to a trustee under the Bankruptcy Code, including without limitation, Sections 108 and 505 of the Bankruptcy Code. Except as expressly provided in this Plan, the Sale Order, and the Settlement Order, no assets of the Estates shall be deemed released or compromised by or as a result of this Plan, its confirmation, its consummation or its treatment of any Claim or creditor. No "insured versus insured" exclusion contained in any insurance policy shall apply to any claims brought or prosecuted by the Liquidation Trustee. Further, no defense, right of setoff, counterclaim or right of recoupment of the Debtors shall be deemed waived or compromised. The powers, rights and responsibilities of the Liquidation Trustee shall be specified further in the Liquidation Trust Agreement and shall include, subject to matters requiring approval of the Agent for the Senior First Lien Lenders and the Creditor Representative, the authority and responsibility to:  (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan, including, without limitation, the Settlement Order, Settlement Term Sheet and Settlement Escrow Account; (ii) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidation Trust Assets, each in accordance with the Plan and Liquidation Trust Agreement; (iii) sell, liquidate, transfer, distribute or otherwise dispose of the Liquidation Trust Assets or any part thereof or any interest therein pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (iv) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (v) establish and administer the Trust Accounts and, if necessary, any additional trust accounts; (vi) comply with the Plan and exercise the Liquidation Trustee's rights and fulfill its obligations thereunder; (vii) review, reconcile, compromise, settle, prosecute or object to Claims and resolve such objections as set forth in the Plan; (viii) employ Professionals, including Professionals already retained by the Estates or the Committee, to represent the Liquidation Trust with respect to its

-18-

responsibilities; (ix) file appropriate Tax returns and other reports on behalf of the Liquidation Trust and the Debtors and pay from Liquidation Trust Assets or other obligations owed by the Liquidation Trust and the Debtors; (x) exercise such other powers as may be vested in the Liquidation Trustee or as deemed by it to be necessary and proper to implement the provisions of the Plan and the Liquidation Trust Agreement in consultation with the Creditor Representative and the Agent for the Senior First Lien Lenders; (xi) take such actions as are necessary or appropriate to close or dismiss any or all of the Chapter 11 Cases; (xii) obtain financing and incur debt on such terms and conditions, and at such time or times as the Liquidation Trustee shall determine and grant a subordinate security interest in the Liquidation Trust Assets (whether tangible or intangible) as security for such obligations; and (xiii) dissolve the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement. The Liquidation Trustee shall distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement. Other rights and duties of the Liquidation Trustee and the beneficiaries of the Liquidation Trust shall be as set forth in the Liquidation Trust Agreement. Without limiting the foregoing, any obligation of the Debtors arising under or in connection with the Settlement Term Sheet and Settlement Order relating to the satisfaction of the Settlement Escrow Agent's fees and expenses that remain outstanding at the time and are incurred after the time of the funding of the Liquidation Trust, including, without limitation, any Indemnification Payments and expenses to be paid by the Debtors required under the Settlement Term Sheet, shall be treated as Liquidation Trust Expenses and shall be obligations of the Liquidating Trustee and paid in accordance with the terms of the Settlement Term Sheet and Settlement Order. Further, any obligations of the Debtors arising under or in connection with the Sale Order and the APA shall be obligations of the Liquidation Trustee and paid in accordance with the Sale Order, APA or any other Order of the Court enforcing the Sale Order and APA.

The Liquidation Trust Agreement (or an employment agreement which shall be entered into by the Liquidation Trustee on behalf of the Liquidation Trust) generally will provide for, among other things, subject to a budget approved by the Agent for the Senior First Lien Lenders: (i) the payment of compensation to the Liquidation Trustee based upon hourly rates typically charged in the conduct of the Liquidation Trustee's business plus reimbursement of business expenses; (ii) the payment of other expenses of the Liquidation Trust, including the cost of pursuing the claims assigned to the Liquidation Trust and the costs and expenses of the Settlement Escrow Account; (iii) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (iv) the investment of Cash by the Liquidation Trustee within certain limitations; (v) the preparation and filing of appropriate Tax returns and other reports on behalf of the Liquidation Trust and the Debtors and the payment of Taxes or other obligations owed by the Liquidation Trust and the Debtors; (vi) the orderly liquidation of the Liquidation Trust's assets; and (vii) prosecution of any Causes of Action assigned to the Liquidation Trust, which may include the litigation, settlement, abandonment or dismissal of any claims, rights or Causes of Action assigned to the Liquidation Trust.

## 4. Creditor Representative

The Creditor Representative is authorized to consult with the Liquidation Trustee and has the powers specified in the Liquidation Trust Agreement.

### 5. Fees and Expenses of the Liquidation Trust

Except as otherwise ordered by the Court, subject to a budget approved by the Agent for the Senior First Lien Lenders, the Liquidation Trust Expenses shall be paid from the Liquidation Trust Expense Account in accordance with the Plan and the Liquidation Trust Agreement.

### 6. Reports to be Filed by the Liquidation Trustee

The Liquidation Trustee, on behalf of the Liquidation Trust, shall provide quarterly reports regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan.

### 7. Indemnification

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the Liquidation Trustee. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Expense Account.

### 8. Tax Treatment

The Liquidation Trust generally is intended to be treated, for U.S. federal income Tax purposes, as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), for the benefit of the Holders of Allowed Claims entitled to distributions of Pending Payments, as more specifically provided for under the Liquidation Trust Agreement. Accordingly, for all federal income Tax purposes the transfer of Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of the Liquidation Trust Assets directly from the Debtors to the Holders of such Allowed Claims followed by the transfer of such Liquidation Trust Assets by the Holders of Allowed Claims to the Liquidation Trust in exchange for rights to Pro Rata distributions from the Liquidation Trust. The Holders of Allowed Claims will be treated for federal income Tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets in the amounts of the Liquidation Trust Assets and any earnings thereon. The Liquidation Trustee will be required by the Liquidation Trust Agreement to file federal Tax returns for the Liquidation Trust as a grantor trust with respect to any Liquidation Trust Assets pursuant to applicable Treasury Regulations, and any income of the Liquidation Trust will be treated as subject to Tax on a current basis. The Liquidation Trust Agreement will provide that the Liquidation Trustee will pay any such Taxes imposed on it from the Liquidation Trust Assets as required by law and in accordance with Article V.A. In addition, the Liquidation Trust Agreement will require consistent valuation by the Liquidation Trustee and the holders of Allowed Claims, for all federal income Tax purposes, of any property held by the Liquidation Trust. The Liquidation Trust Agreement will provide that termination of the trust will occur no later than seven years after the Effective Date, *provided*, *however*, that, on or prior to the date of such termination, the Liquidation Trustee may extend the term of the Liquidation Trust for a finite period, if such an extension is necessary to liquidate the Liquidation Trust Assets or for other good cause. Multiple extensions may be obtained so long as the Liquidation Trustee extends such terms prior to the expiration of each extended term; *provided*, *however*, that, each such extension is approved by the Bankruptcy Court within six months after the beginning of such extended term and the Liquidation Trustee receives an opinion of counsel or a favorable

ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a grantor trust for federal income tax purposes. The Liquidation Trust Agreement also will limit the investment powers of the Liquidation Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Liquidation Trust to distribute at least annually to the holders of Allowed Claims (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the Liquidation Trust Assets or to meet Claims and contingent liabilities (including Disputed Claims).

9.     Abandonment and Destruction of Documents

Subject to the provisions regarding the destruction of books and records set forth in Section 7.8 of the APA, and unless otherwise required by applicable non-bankruptcy law, the Liquidation Trustee is authorized and empowered to, pursuant to sections 105 and 554 of the Bankruptcy Code and Bankruptcy Rule 6007, abandon and destroy any and all documents, including electronic files, of or related to the Debtors that the Liquidation Trustee, as a prudent person, determines are burdensome or of inconsequential value and benefit to the Liquidation Trust, all without further notice or hearing or order of the Bankruptcy Court. Unless otherwise required by applicable non-bankruptcy law, subject to the approval of the Agent for the Senior First Lien Lenders, the Liquidation Trustee is authorized and empowered to, pursuant to Sections 105 and 554 of the Bankruptcy Code and Bankruptcy Rule 6007, abandon and destroy any and all documents, including electronic files, of or related to the Debtors that the Liquidation Trustee, as a prudent person, determines are burdensome or of inconsequential value and benefit to the Liquidation Trust, all without further notice or hearing or order of the Bankruptcy Court, provided however, that the documents to be abandoned and/or destroyed shall not include any documents related to unliquidated, unresolved or contested claims, inlcuding, without limitation, any and all documents related to the claims of Tribual Merchant Services, LLC Tribul LLC and Second Source Funding LLC against the Debtors. Unless otherwise required by applicable law or this Plan, upon the first (1st) anniversary of the termination of the Liquidation Trust Agreement, any and all documents in the possession of the Debtors' Professionals and the Committee's Professionals as a result of or arising in any way out of their representation of the Debtors and/or the Committee, respectively, shall be deemed destroyed and no Person shall be entitled to obtain such documents.

B.     **Corporate Action**

1.     **Certificates of Incorporation or Organization**

Each of the Debtors will cease to exist, and all existing certificates of incorporation and organization and by-laws and operating agreements will be canceled, as of the Effective Date. No new certificates of incorporation or organization or articles of incorporation or organization and operating agreements will be necessary.

2.     **Action**

The following actions and transactions will occur and be effective as of the Effective Date, if no such other date is specified in such other documents, and will be authorized and approved in all

-21-

respects and for all purposes without any requirement of further action by the Debtors, the Liquidation Trustee or any other person or Entity: (a) the establishment of the Liquidation Trust; (b) the appointment of the Liquidation Trustee to act on behalf of the Liquidation Trust; (c) the transfer of the Liquidation Trust Assets to the Liquidation Trust; (d) the creation of the Trust Accounts; (e) distributions pursuant to the Plan; (f) the adoption, execution, delivery and implementation of all contracts, instruments, releases and other agreements or documents related to any of the foregoing; (g) the adoption, execution and implementation of the Liquidation Trust Agreement; and (h) the other matters provided for under the Plan involving the structure of any Debtor or action to be taken by or required of any Debtor or the Liquidation Trustee.

### 3. Cancellation of the Equity Securities; Agents for Secured Claims

On the Effective Date, except as otherwise provided for herein, (i) the Equity Securities shall be cancelled, and (ii) the obligations of the Debtors under any agreements, indentures or certificates of designations governing the Equity Securities shall be discharged. Each indenture or other agreement that governs the rights of Holders of Secured Claims and that is administered by an indenture trustee, an agent, or a servicer shall continue in effect including for the purposes of (a) allowing such indenture trustee, agent, or servicer to make the distributions to be made on account of such Claims under the Plan as provided in Article III hereof and (b) permitting such indenture trustee, agent, or servicer to maintain any rights or Liens it may have for fees, costs and expenses under such indenture or other agreement. Neither the Debtors nor the Liquidation Trustee shall have any obligations to an indenture trustee, an agent, or a servicer other than as specifically provided in this Plan (including the Liquidation Trust Agreement) or the Plan Supplement. The intercreditor provisions of the Financing Agreements are not modified by the Plan.

### C. No Revesting Of Assets

The property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but, subject to the Debtors funding in full the Allowed Administrative Claims and other Allowed Priority Claims Reserve, shall be deposited in the other Trust Accounts and will vest in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with the Plan and the Liquidation Trust Agreement.

### D. Trust Accounts

### 1. Liquidation Trust Accounts

#### a. Creation and Funding

On or prior to the Effective Date, the Trust Accounts will be established and vest in the Liquidation Trust. They shall be maintained by the Liquidation Trustee in accordance with the terms of the Liquidation Trust Agreement. No later than fifteen (15) days prior to the hearing to consider Confirmation of the Plan, (a) the Committee and the Debtors, subject to the approval of the Agent for the Senior First Lien Lenders, will agree on the budget for the Liquidation Trust Expenses to be funded into each of the Trust Accounts on the Effective Date and (b) the Debtors

will file in the Plan Supplement revised Liquidation Trust Agreement reflecting such funding amounts.

### b. Closure

Upon obtaining an order of the Bankruptcy Court authorizing final distribution and closure of the Chapter 11 Cases, any funds remaining in the Liquidation Trust Accounts shall be distributed in accordance with the Plan, the Liquidation Trust Agreement, and any final decree entered in the Debtors' Chapter 11 Cases.

### 2. Liquidation Trust Expense Account

On or after the Effective Date, the Liquidation Trust Expense Account will be established to pay Liquidation Trust Expenses. The Liquidation Trust Expense Account will be funded by the transfer of funds from the Liquidation Trust Account by the Liquidation Trustee in amounts determined by the Liquidation Trustee with the consent of the Agent for the Senior First Lien Lenders.

### E. Preservation of Rights of Action

Except as provided in the Sale Order, the Settlement Order, the Plan, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan including the Liquidation Trust Agreement, in accordance with Section 1123(b) of the Bankruptcy Code, the Liquidation Trustee will retain and may enforce any claims, demands, rights and Causes of Action that any Estate may hold against any person or Entity to the extent not released under the Sale Order, the Settlement Order, Article XII.H or otherwise. The Liquidation Trustee may pursue such retained Claims, demands, rights or Causes of Action, in accordance with the best interests of the Estate or Estates that held such Claims, demands, rights or Causes of Action. Any recovery of Cash by the Liquidation Trustee on account of such actions will be deposited in the applicable Liquidation Trust Account and distributed pursuant to the terms of the Plan and the Liquidation Trust Agreement.

### F. Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date, in consultation with the Committee.

### G. Effectuating Documents; Further Transactions

The Chief Restructuring Officer or any other appropriate officer of the Debtors, or after the Effective Date, the Liquidation Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of the Debtors, or after the Effective Date, the Liquidation Trustee, shall be authorized to certify or attest to any of the foregoing actions.

### H.     Exemption From Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from the Debtors to the Liquidation Trust or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.     Classes Entitled To Vote

Each Impaired Class of Claims or Interests that will (or may) receive or retain property or any interest in property under the Plan, shall be entitled to vote to accept or reject the Plan.  By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

### B.     Acceptance By Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.     Distributions For Claims Allowed As Of The Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Administrative Claims and Priority Claims that are Allowed Administrative Claims or Allowed Priority Claims as of the Effective Date shall be made as of the Effective Date and will be deemed made on the Effective Date if made no later than 60 days after the Effective Date, or as soon thereafter as practicable.

### B.     Interest On Claims

Except for Classes 1, 2 and 3, or as otherwise specifically provided by this Plan or the Confirmation Order, or by applicable bankruptcy law, post-petition interest shall not accrue and

-24-

not be paid on Allowed Claims when due under the contract, agreement, or other instrument governing the terms and conditions of the obligation comprising such Allowed Claim.

## C. Distributions

Prior to the Effective Date, the Debtors, and after the Effective Date, the Liquidation Trustee, shall make all distributions required under this Plan (subject to the provisions of the Plan). All distributions shall be in cash unless the Holder of the Claim agrees otherwise in writing. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court.

## D. Distributions of Funds Held in Cure Escrow Account

To the extent the funds in the Cure Escrow Account have not been previously disbursed in accordance with the terms applicable thereto, such funds, less the Settlement Escrowed Funds and the Tribal Cure Escrow as defined below, will on the Effective Date be disbursed to pay Secured Claims under Class 1, 2, 3, 4, and 5 above in accordance with the priorities for payment of those claims as provided in Article III.B above.

## E. Compensation and Reimbursement for Services Related to Distributions

The Liquidation Trustee will receive from the Liquidation Trust Expense Account, without further Bankruptcy Court approval, unless there is an objection by a party in interest, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services in accordance with the Liquidation Trust Agreement.

## F. Means Of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its discretion.

## G. Delivery Of Distributions

Distributions to Holders of Allowed Claims shall be made by the Debtors or Liquidation Trustee, as the case may be, (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee, as the case may be, after the date of any related proof of Claim, (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Debtors or the Liquidation Trustee, as the case may be, has not received a written notice of a change of address, (iv) in the case of the Holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, to the indenture trustee, agent, or servicer, or (v) at the addresses set forth in a properly completed letter of transmittal accompanying securities properly remitted to the Debtors. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors or the Liquidation Trustee, as the case may be, its agent, or servicer is notified of such Holder's then current address, at which time all

-25-

missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions made through the Debtors or the Liquidation Trustee, agent, or servicer, shall be returned to the Liquidation Trust until such distributions are claimed. All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Distribution Date, after which date all unclaimed property shall revert to the Liquidation Trust Account from which it was disbursed free of any restrictions thereon and the claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Notwithstanding anything to the contrary in the Disclosure Statement or the Plan, or any subsequent versions, amendments, or revisions to the Disclosure Statement or Plan, the funds in the Cure Escrow Account designated to satisfy the cure claims of Tribul Merchant Services, LLC, Tribul LLC, and Second Source Funding LLC (the "Tribul Parties") in the amount of $3,956,009 (the "Tribul Cure Escrow") may not be used for any purpose, including but not limited to making distributions to creditors, paying Liquidation Trust expenses, or any other use, except to satisfy the Debtors' cure obligations to the Tribul Parties absent further order of the Court or agreement between the Debtors (or the Liquidation Trustee once appointed) and the Tribul Parties. Until such time as the Debtors (or the Liquidation Trustee, as applicable) and the Tribul Parties have agreed to a resolution of the Tribul Parties' cure claims or the Court has entered an order resolving the Tribul Parties' cure claims, the Tribul Cure Escrow shall remain in escrow with Wilmington Trust Company as escrow agent.

## H.    Fractional Dollars; *De Minimis* Distributions

Any other provision of the Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Debtors, the Liquidation Trustee, or any indenture trustee, agent, or servicer, as the case may be, shall not make any payment of less than one hundred dollars ($100.00) with respect to any Claim unless a request therefore is made in writing to the Debtors, the Liquidation Trustee, indenture trustee, agent, or servicer, as the case may be.

## I.    Withholding And Reporting Requirements

In connection with this Plan and all distributions hereunder, the Debtors or the Liquidation Trustee, as the case may be, shall, to the extent applicable, comply with all Tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors or the Liquidation Trustee, as the case may be, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, withholding distributions from any beneficiary who fails to provide a completed IRS Form W-9 or other requested Tax information.

-26-

**J. Setoffs**

Except with respect to claims of a Debtor released pursuant to the Plan, APA, Sale Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or in the Chapter 11 Cases, the Liquidation Trustee pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such claim (before any distribution is made on account of such Claim) the claims, rights and Causes of Action of any nature that the applicable Debtor may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor of any claims, rights and Causes of Action that the Debtor or Debtors may possess against such a Claim Holder, which are expressly preserved under Article V.E.

**K. Rejection**

    **1. Status of Remaining Executory Contracts**

On the Effective Date, and unless previously rejected pursuant to a Final Order, to the extent permitted by applicable law, all of the Debtors' remaining prepetition executory contracts and unexpired leases are rejected by the Debtors as of the Confirmation Date, unless such executory contract or unexpired lease:

        (1)    is expressly identified in the Plan Supplement as a contract or lease that is being assumed pursuant to the Plan;

        (2)    is the subject of a motion to assume filed on or before the Confirmation Date;

        (3)    is the subject of an agreement, entered into on or before the Confirmation Date, among the Debtors and the counterparty to such executory contract to extend the time to assume or reject such executory contract to a date subsequent to the Confirmation Date; or

        (4)    is already assumed under the APA and, pursuant to and, in furtherance of the Sale Order.

    **2. Bar Date for Filing Claims for Rejection Damages**

If the rejection of any of the Debtors' prepetition executory contracts or unexpired leases gives rise to a Claim, a proof of Claim must be served upon the Debtors, Debtors' counsel and the Claims Agent within thirty (30) days after the earlier of (a) service of notice of entry of the Confirmation Order; or (b) service of such other notice that the executory contract or unexpired lease has been rejected, or (c) such other order of the Bankruptcy Court establishing an earlier date for the filing of such proof of claim. Any claim not served within such time period will be forever barred.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### A.      Objection Deadline; Prosecution Of Objections

As soon as practicable after payment in full of Classes 1 and 2, but in no event after the later of (i) one hundred and eighty (180) days after the payment in full of Classes 1 and 2 (unless extended by an order of the Bankruptcy Court) and (ii) the date such Claim or Interest is filed and served upon the Debtors, the Committee or the Debtors prior to the Effective Date, and thereafter the Liquidation Trustee, shall file objections to Claims and Interests with the Bankruptcy Court and serve such objections upon the Holders of each of the Claims or Interests to which objections are made.  Nothing contained herein, however, shall limit the Liquidation Trustee right to (y) object to Claims or Interests, if any, filed or amended more than one hundred and eighty (180) days after the foregoing deadline or (z) seek further extension of time by order of the Bankruptcy Court to object to Claims or Interests.

### B.      Estimation of Claims

Any Debtor or the Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

### C.      No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### D.      Adjustment to Claims and Interests Without Objection

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidation Trustee, as applicable, without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise agreed by the Debtors prior to the Effective Date, and thereafter the Liquidation Trustee, or unless otherwise order by the Bankruptcy Court, any and all proofs of Claim filed after the applicable Claim bar date shall be deemed disallowed in full and expunged from the official Claims register maintained in these Chapter 11 Cases for purposes of distribution or any other treatment under the Plan as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distribution on account of such Claims, unless such late Claim has been deemed timely filed by a Bankruptcy Court order.

## E.    Disallowance of Claims or Interests

Any Claims or Interests held by an entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidation Trustee.

## F.    No New Claims

On or after the Effective Date, except as provided in herein or otherwise agreed, a Claim may not be filed without the prior authorization of the Bankruptcy Court, the Debtors or the Liquidation Trustee, and any such new Claim filed shall be deemed disallowed in full and expunged without any further action or order of the Bankruptcy Court.

## G.    Offer of Judgment

The Debtors or the Liquidation Trustee are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim must pay the costs incurred by the Debtors and the Liquidation Trustee after the making of such offer, the Debtors and the Liquidation Trustee are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.  **Nothing in this provision is intended to, nor shall it, expand Federal Rule of Civil Procedure 68.**

## H.    Distributions After Allowance

### 1.    Allowed Administrative Expenses and Allowed Priority Claims.

Prior to the Effective Date the Debtors, and after the Effective Date, the Liquidation Trustee, shall pay in full each Allowed Administrative Expense and other Allowed Priority Claim from the Allowed Administrative Expenses and Allowed Priority Claims Reserve as soon as each such Administrative Expense or Priority Claim is Allowed.

### 2. All other Allowed Claims.

All other distributions on Allowed Claims shall be made by the Liquidation Trustee on each Distribution Date in accordance with the terms of the Liquidation Trust Agreement.

## I. Priority Unsecured and General Unsecured Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidation Trustee from paying, pursuant to the terms of this Plan or the Liquidation Trust Agreement, Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## J. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtors shall comply with all Tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, and the Liquidation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens and encumbrances.

## K. No Release of Liens

Except as otherwise provided in the Sales Order, no Liens against the property of any Estate will be released and discharged, and all of the right, title and interest of any Holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against the Liquidation Trust Assets in accordance with and subject to the terms of the applicable Financing Agreements. All such Liens against the Liquidation Trust Assets shall be fully released and discharged upon the Holder of the Liens receiving its full distribution under the Plan.

#13222612 v45

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      Conditions To Confirmation**

The Bankruptcy Court shall not enter the Confirmation Order unless and until (i) the Confirmation Order shall be reasonably acceptable in form and substance to the Debtors and the Committee and Agent for the Senior First Lien Lenders and (ii) the Confirmation Order includes a finding of fact that the Reorganization Parties acted in good faith within the meaning of and with respect to all of the actions described in Section 1125(e) of the Bankruptcy Code and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

**B.      Conditions To Consummation**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be (i) satisfied or (ii) waived in accordance with Article IX.D. below:

(1)      The Confirmation Order, in form and substance reasonably acceptable to the Debtors and the Committee and the Agent for the Senior First Lien Lenders, confirming the Plan, as the same may have been modified, must have become a Final Order and must, among other things, provide that:

        (a)      the Debtors and the Liquidation Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan;

        (b)      the provisions of the Confirmation Order are non-severable and mutually dependent;

        (c)      the transfers of property by the Debtors (a) to the Liquidation Trust (i) are or will be legal, valid, and effective transfers of property, (ii) vest or will vest the Liquidation Trust with good title to such property, (iii) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law, and (iv) do not and will not subject the Liquidation Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability, and (b) to Holders of Claims under the Plan are for good consideration and value and are in the ordinary course of the Debtors' respective businesses; and

(2)      The Liquidation Trust Agreement, in form reasonably satisfactory to the Debtors, the Liquidation Trustee the Committee and the Agent for the Senior First Lien Lenders shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied.

#13222612 v45

(3)     The Substantive Consolidation Order shall have been entered or be entered as part of the Confirmation Order;

(4)     All authorizations, consents, and regulatory approvals required, if any, in connection with the Effective Date shall have been obtained.

(5)     There shall not be in effect on the Effective Date any (i) order entered by a U.S. court or (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity or (iii) United States or other applicable law, staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(6)     No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall remain pending.

## C.      Substantial Consummation

On the Initial Distribution Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

## D.      Waiver Of Conditions

Each of the conditions set forth in Article IX, except for Article IX.B.4 (related to the requirement of Confirmation and entry of the Confirmation Order), may be waived in whole or in part by the Plan Proponents and the Agent for the Senior First Lien Lenders collectively without any notice to parties in interest except the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Plan Proponents regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Plan Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE X.

## MODIFICATIONS AND AMENDMENTS

The Plan Proponents may jointly amend, alter or modify the Plan or any exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Plan Proponents may jointly, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under the Plan; *provided*, *however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XI.

## RETENTION OF JURISDICTION

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(1)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(2)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Liquidation Trustee shall be made in the ordinary course of business and, absent an objection by a party in interest, shall not be subject to the approval of the Bankruptcy Court;

(3)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidation of any claims arising therefrom;

(4)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including, but not limited to, any and all motions for approval of asset sales by the Debtors or the Liquidation Trustee;

(5)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Liquidation Trust Agreement, the Disclosure Statement or the Confirmation Order;

(6)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(7)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(8)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(9)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(10)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, the Liquidation Trust Agreement or the Confirmation Order;

(11)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(12)    Recover all assets of the Debtors and property of the Estates, wherever located;

(13)    Hear and determine any Causes of Action that might be brought by the Liquidation Trustee against any present or former officer, director, manager, shareholder or member of any one or more of the Debtors including but not limited to i) any preference or fraudulent transfer action under federal or state law arising from loans made by one or more of the Debtors, ii) from distributions made by one or more of the Debtors to one or more of its equity Holders for the payment of federal or state Taxes on income realized or thought to be realized by one or more of the Debtors, iii) fraud, mismanagement, breach of fiduciary duty or similar Claims related to the management of one or more of the Debtors prior to the Petition Date, or iv) related to the redemption or purchase by one or more of the Debtors or by any of their equity Holders of the equity Interests of John Martillo in any one or more of the Debtors.

(14)    Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(15)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(16)    Enter a final decree closing the Chapter 11 Cases.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

**A.      Bar Dates For Certain Claims**

**1.      Administrative Claims**

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims, which date will be forty-five (45) days after the Effective Date.  Holders of asserted Administrative Claims must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Liquidation Trustee shall have ninety (90) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and

object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

### 2. Administrative Ordinary Course Liabilities

Except as the Court may order otherwise in connection with any request by the Debtors or the Liquidation Trustee for the setting of a supplemental Administrative Claims Bar Date, holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the Debtors' businesses (other than Claims of governmental units for Taxes (and for interest and/or penalties related to such Taxes)) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to by the Debtors or the Liquidation Trustee, shall be paid by the Debtors or the Liquidation Trust, as the case may be, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim. For the avoidance of doubt, Holders of Administrative Claims pursuant to Section 503(b)(9) of the Bankruptcy Code **shall be required** to file a proof of Administrative Claim on or before the Administrative Claims Bar Date.

### B. Payment Of Statutory Fees

All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid on or before the Effective Date.

### C. Severability Of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### D. Successors And Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## E. Committee

Effective on the Effective Date, the duties of the Committee shall terminate and the Committee shall dissolve, except with respect to any appeal of an order in the Chapter 11 Cases and applications for Professional Fees.

## F. Exculpation And Limitation Of Liability

**Other than as set forth in the Settlement Term Sheet and Settlement Order, none of the Reorganization Parties shall have or incur any liability to the Debtors, their Estates, any Holder of a Claim or an Interest, or to any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or to any of their successors or assigns, for any act or omission occurring subsequent to the Petition Date in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, negotiation of the Disclosure Statement, negotiation of this Plan, negotiation of the Liquidation Trust Agreement, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects each of the Reorganization Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

**Notwithstanding any other provision of this Plan, no Holder of a Claim or Interest and no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any one or more of the Reorganization Parties for any act or omission occurring subsequent to the Petition Date in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct; provided that the exculpation and limitation on liability in this Article XII.E or otherwise in the Plan shall not limit, abridge, or otherwise affect (a) the rights of the parties to the Settlement Term Sheet, including without limitation, Moneris Solutions, Inc. and Harris, N.A., and any and all other parties to assert, enforce, sue on, or settle any claims, causes of action or other rights provided for in the Settlement Term Sheet or Settlement Order; and (b) the rights of Purchaser under the Sale Order, except specifically as limited by the Settlement Order.**

## G. Permanent Injunction

**Except as otherwise expressly provided in the Settlement Order, Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the property or interests in property of the Debtors; (ii) commencing or continuing an action on a Claim released under Article XII.H of the Plan solely against any one or more of the Reorganization Parties, (iii) the enforcement,**

attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the property or interests in property of the Debtors, (iv) creating, perfecting, or enforcing any encumbrance of any kind against any property or interests in property of the Debtors, and (v) other than as a defense by entities and Persons that included a right of setoff in a timely filed proof of claim, to the extent that such proof of claim has not been disallowed, or otherwise properly asserted setoff in the Chapter 11 Cases, asserting any right of setoff or subrogation of any kind against any obligation due to the Debtors or against the property or Interests in property of the Debtors on account of any such Claim or Interest. The foregoing injunction will extend to and be for the benefit of the Liquidation Trust and its properties and Interests in property. For the avoidance of any doubt, this Permanent Injunction shall not interfere in any way with the ability of the Liquidation Trust to pursue any property of the Debtors and realize the value of the Debtors' interest in such property in accordance with the terms of the Liquidation Trust. This Permanent Injunction shall not, however, apply to limit, abridge or otherwise affect (a) the rights of the parties to the Settlement Term Sheet or as provided in the Settlement Order, including, without limitation, the rights of Moneris Solutions, Inc. and Harris N.A., and any and all other parties to enforce the terms of the Settlement Term Sheet or compel compliance with the Settlement Order; (b) the rights of either the Debtors or the Purchaser under the Sale Order, including the right to enforce the injunction granted therein. Nothing in the Plan or Confirmation Order shall enjoin or otherwise prohibit an entity or Person from asserting as a defense a right of setoff to the extent included in a timely filed proof of claim, which proof of claim has not been disallowed, or as otherwise permitted by law in any litigation filed against any such Person or entity by the Debtors, the Committee or the Liquidating Trustee, or any of their successors in interest.

## H. Debtors' Releases

As of the Effective Date, the Debtors together with any successors to the Debtors and each of their respective estates, directors, officers, members, managers, employees, agents, financial advisors, representatives, affiliates, attorneys and professionals (solely in their capacities as such) shall be deemed, to the maximum extent permitted by applicable law, to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities whatsoever (including without limitation for subordination of any kind or nature) in connection with or related to the Debtors, or the administration of the Chapter 11 Cases or the Plan (other than the rights of the Debtors and any successors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents assumed, passed through or delivered in connection with such Plan) and whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date against any of the Reorganization Parties as of the Effective Date, for any act or omission occurring subsequent to the Petition Date in connection with, relating to, or arising out of, the administration of the Chapter 11 Cases, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their

gross negligence or willful misconduct. The releases, waivers and discharges provided for herein shall apply only to acts, omissions, transactions, events or other occurrences that took place to the Effective Date.

Notwithstanding anything to the contrary herein, any and all claims, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever arising under or related to the Settlement Term Sheet, as ordered by the Settlement Order at paragraphs 11, 12, 14 and 15 of the Settlement Order, shall survive entry of an order approving the Plan and be enforceable to the fullest extent in law and equity.

Furthermore, notwithstanding anything to the contrary herein, or in the Liquidation Trust or the Confirmation Order, except as otherwise specifically limited by the Settlement Term Sheet as ordered by the Settlement Order, any and all rights, claims and interests of Debtors and the Purchaser under the APA and Sale Order shall remain in full force and effect and shall survive the Plan, Liquidation Trust Agreement and the Confirmation Order.

Nothing contained in the Plan, the Confirmation Order or the Liquidation Trustee Agreement, shall alter, conflict with, or derogate from provisions of the APA or Sale Order, which provisions shall survive and remain in full force and effect.

## I.     Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Liquidation Trust, and all other parties-in-interest in these Chapter 11 Cases.

## J.     Revocation, Withdrawal, Or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date, subject to the consent of the Committee, and to file subsequent plans of liquidation. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in person, the Debtors or any other person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## K.     Plan Supplement

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing. Upon filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of

the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors.

**L.    Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Liquidation Trustee under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

CM&D Management Services LLC
Charles M. Moore
401 S. Old Woodward, Suite 340
Birmingham, MI  48009
Telephone: (248) 433-3100
Facsimile:  (248) 433-3143

and

JAGER SMITH P.C.
Bruce F. Smith
Steven C. Reingold
Michael J. Fencer
Brendan C. Recupero
One Financial Center
Boston, MA 02110
Telephone: (617) 951-0500
Facsimile:   (617) 951-2414

and

Peter J. Antoszyk
Proskauer Rose LLP
One International Place
Boston, MA 021000-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899

and

Gregory A. Bray
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Lost Angeles, CA 90017

Telephone: (213) 892-4000
Facsimile: (213) 629-5063

and

Robert J. Diehl, Jr.
Bodman LLP
1901 St. Antoine
6th Floor at Ford Field
Detroit, MI 48226
Telephone: (313) 393-7597
Facsimile: (313) 393-7579

and

Peter Burke
Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-fifth Floor
Los Angeles, CA 90071
Telephone: (213) 683-6338
Facsimile: (213) 996-3338

## M.     Indemnification Obligations

None of the indemnification provisions currently in place for directors, officers and each of the Debtors' advisors (whether in the Debtors' bylaws, contracts or otherwise) shall survive confirmation of the Plan except to the extent that (i) any related Claims are covered by insurance policies in respect of the Debtors and (ii) the indemnification is part of the retention of an advisor approved by the Bankruptcy Court.  **Notwithstanding the foregoing, nothing contained in this Article XII.M or elsewhere in this Plan shall  be deemed to disallow or prohibit the assertion of  indemnification obligations, if any, of any Person whose indemnification rights have accrued prior to the Petition Date.  Any such indemnification claim, as well as any other claim filed by such entity or Person, may be objected to, and Allowed or disallowed, as provided under the Plan.  For the absence of doubt, any counterclaims or Causes of Action thereto are similarly preserved.**  The Debtors may obtain sufficient tail coverage under its existing directors and officers insurance policy for current officers and directors provided that the terms are reasonably acceptable to the Debtors and the Committee, subject to the consent of the Agent for the Senior First Lien Creditors.

## N.     Prepayment

Except as otherwise provided in this Plan or the Confirmation Order, the Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided*, *however,* that any such prepayment shall not violate, or otherwise prejudice, the relative priorities among the Classes of Claims.

## O.    Term Of Injunctions Or Stay

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Settlement Order, Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

## P.    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability on any Claim.

## Q.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) and (ii) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to such Debtors, in either case without giving effect to the principles of conflicts of law thereof.

## R.    Incorporation of Settlement Order

The Settlement Term Sheet is incorporated by reference in this Plan as if set forth herein in full.  The Settlement Order remains binding and in full force and effect.


## ARTICLE XIII.

## CONFIRMATION REQUEST

The Debtors and the Committee request Confirmation of the Plan under Section 1129 of the Bankruptcy Code.  If any Impaired Class does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code, the Debtors and the Committee request Confirmation pursuant to Section 1129(b) of the Bankruptcy Code.  In that event, the Debtors and the Committee reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code requires modification.

#13222612 v45

Dated: ~~November~~**December** ___, 2010

CD LIQUIDATION CO.
**LLC, f/k/a**
    Wilmington, DE

**CYNERGY DATA, LLC,**


By: 

                       Name:

_____
Charles M. Moore

Title:   Chief Restructuring Officer


NIXON PEABODY LLP
Mark N. Berman
Dennis J. Drebsky
Lee Harrington
437 Madison Avenue
New York, New York  10022
Telephone:  (212) 940-3000
Facsimile:  (212) 940-3111

PEPPER HAMILTON LLP
David B. Stratton
Evelyn Meltzer
1313 Market Street, Suite 5100
Wilmington, Delaware 19899
Telephone:    (302) 777-6500
Facsimile:     (302) 421-8390

Counsel for the Debtors and Debtors in Possession


Dated: ~~November~~**December** ___, 2010
      **OF**
    Wilmington, DE

**OFFICIAL  COMMITTEE**

**UNSECURED CREDITORS**


By:   _____
Name:  Maria Aprile Sawczuk, Esq.
          Counsel for Iworks, Inc.
Title:   Committee Chair


JAGER SMITH P.C.
Bruce F. Smith
Steven C. Reingold
Michael J. Fencer
Brendan C. Recupero
One Financial Center
Boston, MA 02110
Telephone: (617) 951-0500
Facsimile:  (617) 951-2414

ASHBY & GEDDES. P.A.
Gregory A. Taylor
Karen B. Skomorucha
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
Telephone:  (302) 654-1888
Fax:  (302) 654-2067

Attorneys for the Official Committee of Unsecured Creditors

**EXHIBIT A**

**<u>Liquidation Trust Agreement</u>**

#13222612 v4<u>5</u>

Document comparison by Workshare Professional on Friday, December 17, 2010
11:21:48 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://PHDMS/Active/13222612/4 |
| Description | #13222612v4<Active> - Cynergy - Plan of Liquidation |
| Document 2 ID | interwovenSite://PHDMS/Active/13222612/5 |
| Description | #13222612v5<Active> - Cynergy - Plan of Liquidation |
| Rendering set | PH Standard |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 53 |
| Deletions | 53 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 106 |