## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CD LIQUIDATION CO., LLC, f/k/a | ) | Case No. 09-13038(KG) |
| CYNERGY DATA, LLC, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| CHARLES M. MOORE, as Trustee | ) | |
| of the CD LIQUIDATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - and - | ) | |
| | ) | |
| JOHN MARTILLO, | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 11-51643(KG) |
| | ) | |
| MARCELO PALADINI, | ) | |
| | ) | |
| Defendant. | ) | **Re Dkt Nos. 3, 15 & 31** |
| _____ | ) | |

## MEMORANDUM OPINION

The plaintiff, Charles M. Moore, is the duly appointed trustee (the "Liquidation

Trustee") of the CD Liquidation Trust created pursuant to the confirmed plan of liquidation

of the substantively consolidated estates of CD Liquidation Co., LLC f/k/a Cynergy Data,

LLC ("CD Liquidation"), CD Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC

("CD Plus") and Cynergy Data Holdings, Inc. ("CD Holdings") and, together with CD

Liquidation and CD Plus, (the "Debtors").

The Liquidation Trustee has filed an adversary proceeding and moved pursuant to Bankruptcy Rule 7065 (the "Injunction Motion") [Adv. D.I. 3], to enjoin defendant Marcelo Paladini ("Paladini") from continuing to prosecute certain claims against John Martillo ("Martillo") that are the subject of an action (the "Paladini Action") that Paladini initiated in the United States District Court for the Southern District of New York (the "New York District Court"). *Marcelo Paladini v. John Martillo*, Index No. 10 CIV 3220-RJH. Martillo intervened in the adversary proceeding and joined with the Liquidation Trustee in seeking injunctive relief. Martillo has made a very significant contribution in support of the Injunction Motion.

The Injunction Motion is premised on the Liquidation Trustee's claim that the causes of action that Paladini seeks to assert against Martillo in the Paladini Action arise out of and relate to Debtors' allegedly (and disputed) improper redemption of Martillo's equity interests in the Debtors and thus are derivative claims belonging not to Paladini but to the Liquidation Trustee as the successor-in-interest to the Debtors' estates. The Liquidation Trustee also argues that the Court's exclusive jurisdiction to hear and determine all such causes of action was expressly reserved in the Joint Plan of Liquidation of Debtors [D.I. 1190] (the "Plan") and the Order Confirming the Joint Plan of Liquidation of Debtors [D.I. 1202] (the "Confirmation Order"). Paladini seeks to prosecute in his name, and before the New York District Court, causes of action that the Liquidation Trustee asserts belong to him to bring before this Court. The Liquidation Trustee therefore filed the Complaint and the Injunction

Motion. Paladini has moved to dismiss the Complaint and objects to the request for injunctive relief, arguing that the Complaint fails to state a claim and there is no basis to enjoin him from prosecuting the Paladini Action. The Court finds that Paladini's arguments are wholly without merit, bordering on, if not, bad faith, and the Court denies the Injunction Motion and Objection. Neither Paladini nor his lawyer should think for one moment that the egregious misstatements of the record and misleading arguments were lost on the Court.

The New York District Court has been awaiting this Court's decision too long and respectfully deferred to the Court's determination. The Court will therefore address only the basic facts necessary for the Court's decision.

## RELEVANT FACTS

Paladini's claims arise from two transactions in 2007 through which Cynergy redeemed Martillo's shares for $46.5 million (the "Redemptions"). Paladini approved the Redemptions both in his individual and executive capacities.

On September 1, 2009, approximately two years after the Redemptions, Cynergy commenced its bankruptcy case. Shortly thereafter, Cynergy's lenders sued Paladini in two state court lawsuits (the "Dymas case" and the "Garrison case"). The lawsuits attacked Paladini's conduct in obtaining loans on Cynergy's behalf and using loan proceeds to redeem Martillo's shares (and also to make payments to himself). *See* NY Complaint ¶ 22 ("Among other things, the lawsuits allege that Paladini improperly procured and utilized the Loan Proceeds, the majority of which went to [Martillo], based upon certain alleged misstatements

of financial information/records of the Companies").

The state court lawsuits never proceeded to judgment because they were stayed at Paladini's request due to Cynergy's bankruptcy case. In both cases, Paladini argued that the banks' claims were derivative claims, property of Cynergy's estate and barred by the automatic stay. See Memorandum of Law in Support of Defendant Marcelo Paladini's Motion to Dismiss, filed in the Dymas Funding case ("Paladini's Dymas Brief" or "PDB"), at pp. 7-16; Memorandum of Law in Support of Defendant Marcelo Paladini's Motion to Dismiss, filed in the Garrison case, at pp. 6-16.

### *Paladini's Litigation Against Martillo*

Paladini brought suit against Martillo in April 2010 by filing a complaint in the New York District Court, and thereafter filed an amended complaint (the "NY Complaint"). The NY Complaint alleges, in sum:

1.  Plaintiff brings this civil action against Defendant for contribution, improper distribution, unjust enrichment or, in the alternative, constructive trust.

2.  Specifically, this suit arises from Defendant's receiving $46.5 million in improper payments with regard to the so-called redemption of all of his shares of stock in [Cynergy]. The amounts paid to Defendant were far in excess of the fair market value of his shares and thus benefitted Defendant at the expense of Plaintiff, as a result of which Plaintiff now faces lawsuits from third parties seeking to hold him liable for the funds Defendant received and wrongfully retained. In addition, as a consequence of the excessive payments to Defendant, the value of Plaintiff's shares in the subject companies were drastically diminished and/or vitiated, ultimately bankrupting [Cynergy].

NY Complaint, ¶¶ 1-2.

4

In the improper distribution count, Paladini alleges that Cynergy redeemed Martillo's shares while insolvent or while its capital was impaired. *Id.* ¶¶ 29-30. Paladini alleges that the Redemptions caused him personal injury because he received less than he would have received for his shares. *Id.* ¶ 31.

In the unjust enrichment count, Paladini seeks the imposition of a constructive trust against Martillo based on the same allegations that Martillo inequitably received more than he should have because of the Redemptions. *Id.* ¶ 37. Paladini further alleges that he suffered injury from Martillo's purported unjust enrichment because the Redemptions led to Cynergy's subsequent bankruptcy, which diminished the value of Paladini's shares and led to lawsuits against him by other creditors. *Id.* ¶ 38.

Paladini pleads two purported harms in his NY Complaint: (1) the Redemptions allegedly diminished the value of his shares (NY Complaint ¶¶ 20, 31, 38 & PO 3); and (2) the Redemptions allegedly caused him to be sued by other creditors (NY Complaint ¶¶ 22-26, 38 & PO 3-4). Martillo moved to dismiss the NY Complaint, on the ground that Paladini's Redemptions claims are for indirect harms that Paladini lacks standing to assert.

### ***The Plan***

After Paladini filed the NY Complaint, Cynergy confirmed and consummated the Plan. *See* D.I. 1202 (Confirmation Order); D.I. 1197 (Plan of Liquidation). Among other things, the Plan grants the Liquidation Trustee the exclusive right to assert actions under Section 544 of the Bankruptcy Code. *See* Plan pp. 2, 7, 9 & 17 (Liquidation Trustee shall

dispose of all "Liquidation Assets," which include "Causes of Action," including "Recovery Actions," which include all causes of action under Chapter 5 of the Bankruptcy Code); *Id.* ¶ 18 ("the Liquidation Trustee shall be...the representative of the Estate of each of the Debtors...[and] shall be vested with all rights, powers and benefits afforded to a trustee under the Bankruptcy Code").  The Plan's permanent injunction also bars claim and interest holders from "commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the property or interests in property of the Debtors." Plan, p. 36.

In addition, the Plan expressly provides this Court with exclusive jurisdiction over any estate claims brought against Martillo (and Paladini), including claims based on the Redemptions:

> Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter II Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:
>
> * * *
>
> (13) Hear and determine any Causes of Action that might be brought by the Liquidating Trustee against any present or former officer, director, manager, shareholder or member of any one or more of the Debtors including but not limited to ... the redemption or purchase by one or more of the Debtors or by any of their equity Holders of the equity interests of John Martillo in any one or more of the Debtors.

Plan, Article XI, p. 34 (emphasis added).

6

### *The Liquidation Trustee's Lawsuit Against Martillo*

On March 28, 2011, the Liquidation Trustee commenced an adversary proceeding against Martillo on account of the Redemptions. The Liquidation Trustee challenges the Redemptions payments on the theory that they are fraudulent transfers, improper redemptions and unlawful conveyances of corporate assets. *See* Trustee's Complaint at ¶¶ 32-88. These are the same payments that Paladini is seeking to recover for himself in his Paladini Action.

### *The Liquidation Trustee's Injunction Motion*

On the same day that he filed his complaint against Martillo, the Liquidation Trustee filed his complaint and the Injunction Motion to enjoin Paladini from proceeding with the Paladini Action against Martillo. Martillo supports the Liquidation Trustee's Injunction Motion – not because Martillo believes that the Liquidation Trustee is entitled to recover on the Redemptions claims (Martillo believes that the Redemptions payments were proper) – but because Martillo believes that only the Liquidation Trustee has standing to maintain the Redemptions claims, and Martillo should not have to defend against two lawsuits based on the same issues.

## DISCUSSION

## PALADINI'S REDEMPTION CLAIMS ARE DERIVATIVE AND MAY ONLY BE ASSERTED BY THE LIQUIDATION TRUSTEE

The Court will look to the law of the state of incorporation to determine if the Paladini claims are direct or derivative. *In re Sunrise Secs. Litig.,* 916 F.2d 874, 881-882 (3d Cir. 1990). Delaware and New York law apply here, as one redemption involved the stock of CD

Holdings, a Delaware corporation, and the other involved the stock of its predecessor C.P.S.,
a New York corporation.

Under Delaware law, share redemptions are governed by Section 160 of the Delaware
General Corporation Law, which provides that a corporation may not redeem its shares if the
corporation's capital is impaired or if the transaction would cause an impairment, i.e.,
insolvency. *See* 8 Del. C. § 160.  The Delaware District Court and the Third Circuit have
considered the nature of claims brought under Section 160 and expressly held that the claims
are for general rather than personal harms:

> In the case of claims brought under Section 160, the Court finds
> the purpose of the statute to be instructive in determining
> whether Section 160 claims are general or personal. The purpose
> of Section 160 is to protect a corporation's creditors.  *Because
> Section 160 protects all creditors rather than just one individual
> creditor, the Court concludes that violations of Section 160 are
> general claims that accrue to all creditors....*

*PHP Liquidating, LLC v. Robbins,* 291 B.R. 603, 610 (D. Del. 2003) (citations omitted)
(emphasis added), *aff'd,* 128 F. App'x. 839, 845-46 (3d Cir. 2005) ("If Section 160 creates
a private right of action, it is a general right of action that seeks to redress an injury common
to all creditors.... [Plaintiff's] claim is a general one which, if it can be brought, would be
equally available to any creditor of the debtor.").

Thus, under Delaware law, an action to recover an improper redemption is for the
benefit of all creditors, who must share proportionally in the recovery. *Id.; See also Johnston
v. Wolfe,* 1983 WL 21437, at *3 (Del. Ch. Feb. 24, 1983) ("all creditors are to share

proportionately in any amount recovered" for improper redemption).

Improper redemption claims also are derivative under New York law. Share redemptions are governed by Section 513 of the New York Business Corporation Law, which prohibits a corporation from redeeming its shares if the corporation is insolvent or thereby would become insolvent. *See* N.Y. Bus. Corp. § 513.14.   Section 513 is designed to protect all creditors generally, not just one creditor individually. *See Vowteras v. Argo Compressor Servo Corp.,* 77 A.D.2d 945,947 (N.Y. App. Ct. 1980) (Section 513's purpose is "to insure that the assets left over after a distribution to shareholders were sufficient to cover existing liabilities and stated capital").

Accordingly, Paladini's improper redemption claim is a claim for a general harm, not a direct harm.   Paladini claims he suffered three "direct" injuries:  (1) the Redemptions allegedly devalued his shares (NY Complaint ¶¶ 20, 31, 38 & PO 3); (2) the Redemptions caused him to be sued by other creditors (NY Complaint ¶¶ 24-26, 38 & PO 3-4); and (3) the Redemptions caused creditors to threaten to enforce a guaranty against him.

Paladini cannot show injury independent of harm to Cynergy. In *Gentile v. Rosette,* 906 A.2d 91, 97 (Del. 2006), the Delaware Supreme Court stated the test as "[W]hether a claim is derivative or direct depends solely upon two questions: (1) who suffered the alleged harm (the corporation or the suing stockholders individually); and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholders, individually)?'" *See* also *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004):

"Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?"  The New York test is the same. *See Albany Plattsburgh United Corp. v. Bell, 307 A.D. 2d 416, 419-20 (N.Y. App. Ct. 2003).*

Paladini's claims are based on the reduced value of his shares and Cynergy's subsequent inability to pay its debts, thus leading to lawsuits by creditors against Paladini and threatened demands for payment under his guaranty.  The Redemptions and the alleged harm to Cynergy led to the Paladini claims.  Paladini's claims are secondary, derivative of the harms to Cynergy.

### ***Devaluation of Shares***

Paladini's claim that the Redemptions caused Cynergy to become insolvent and thus devalued his shares is a classic derivative claim.  It flows from harm to the corporation. *Gentile,* 906 A.2d at 99 (Del. 2006) ("[A]ny dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction. In the eyes of the law, such equal 'injury' to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually."); *Higgins v. New York Stock Exchange, Inc.,* 806 N.Y.S.2d 339, 349 (N.Y. Sup. Ct. 2005) ("New York courts have consistently held that diminution in the value of shares is quintessentially a derivative claim. While a decrease in share value is undoubtedly harmful to the individual

shareholder, this harm is said to derive from the harm suffered principally by the corporation and only collaterally to shareholders, and thus is derivative in nature") (citations omitted).

### *Creditor Lawsuits*

Paladini's second alleged harm arises from the lawsuits brought against him by Cynergy's lenders for his role in managing Cynergy when it made the Redemptions payments to Martillo. Before Paladini some day is "harmed" by these lawsuits, a court will have to find that he committed wrongdoing and enter a judgment against him.

Nonetheless, any such "harm," to Paladini is indirect because it is based on a principal injury to Cynergy. The NY Complaint clearly alleges that Cynergy, not Paladini, overpaid Martillo, thus subjecting Paladini to lawsuits. See NY Complaint ¶ 26 ("a judgment entered against [Paladini], if any, would be the result of claims related to the inflated distributions [Martillo] received and/or claims [related to the creditors' lawsuits]"). The "inflated distributions" are therefore attributable to the Redemptions. Applying the *Tooley* analysis, this claim is derivative because Paladini "cannot prevail without showing an injury to the corporation." *Tooley,* 845 A.2d at 1036.

### *Guaranty*

Paladini's third purported harm is based on his guaranty of Cynergy's debts. The Court will not consider the guaranty as a basis for denying the injunction motion, because the NY Complaint does not plead a claim based on it. The New York District Court also did not understand any basis for the claim.

11

Even if the Court pretends that Paladini asserted a cognizable claim based on the guaranty, any such claim would be derivative in nature. Paladini is asserting a claim for "harm" caused to him as a shareholder-guarantor by a third party's wrongdoing which purportedly caused the corporation to enter bankruptcy, thereby triggering his guaranty. Courts which have considered such a claim have concluded that any such harm is derivative in nature. *See, e.g.: Amusement Indus., Inc. v. Stern,* 2010 WL 2976199, at *6 (S.D.N.Y. July 26, 2010)(applying Delaware law), *Labovitz v. Washington Times Corp.,* 172 F.3d 897, 901-03 (D.C. Cir. 1999) (applying Delaware law), *Weissman v. Weener,* 12 F.3d 84, 87 (7th Cir. 1993).

### *Paladini's Argument That Derivative Claims Also Can Be Direct Is Inapposite*

Paladini's argument that a single course of conduct can form the basis for both direct and derivative claims, although true in some situations, does not apply here.  This is not a case involving the *Gentile* exception of unique harm to minority shareholders.

Paladini also argues that the Court should abandon the direct/derivative distinction because Cynergy was a closely held corporation. Some courts have abandoned the direct/derivative distinction for closely held corporations but only if doing so will not "(i) unfairly expose the corporation or defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." A.L.I., *Principles of Corporate Governance,* § 7.01(d).  Because of Cynergy's bankruptcy and the creation of a bankruptcy estate

12

consisting of numerous classes of higher priority creditors, none of the three required elements for abandoning the direct/derivative distinction are satisfied here.

## PALADINI'S CLAIM FOR
## UNJUST ENRICHMENT IS DERIVATIVE

Paladini's unjust enrichment claim (and his "alternative" constructive trust claim) is based on the same facts and seeks the same relief as his improper distribution claim, i.*e.,* payment of the $46.5 million redemption payments over to Paladini. *See* NY Complaint ¶¶ 37-44, Prayer for Relief, ¶¶ ii, iii.

Paladini alleges that Cynergy (not himself) paid Martillo too much for his shares. NY Complaint ¶¶ 18 ("the Companies made two payments to the Defendant"). As the party who paid the money (and to whom the money originally belonged), Cynergy was injured by any purported unjust enrichment. *See SIPA v. Bernard L. Madoff Inv. Secs. LLC, 429* B.R. 423, 430-34 (Bankr. S.D.N.Y. 2010) (customers' unjust enrichment claim and proposed constructive trust remedy violated section 362(a)(3) and were void *ab initio* because plaintiffs sought to recover funds previously transferred by the debtor*;* such claims were derivative and only could be asserted by estate);

Any harm that Paladini allegedly suffered is on account of his status as a shareholder of Cynergy. This is an obvious derivative claim. *See Bartfield v. Murphy,* 578 F. Supp. 2d 638, 648-49 (S.D.N.Y. 2008) (dismissing shareholder's unjust enrichment claim because asset allegedly misappropriated was corporate asset and thus claim was derivative of corporation's right to recover).

13

## PALADINI'S CLAIM FOR CONTRIBUTION IS NOT RIPE

Paladini's final claim against Martillo is for contribution for two state court actions in which Paladini has been sued for his own actions relating to the Redemptions. Paladini does not allege that he has been held liable for and paid any damages in these lawsuits. Instead, the NY Complaint alleges only that Paladini has been sued. Both cases have been stayed at Paladini's request because Paladini argued that the claims were derivative in nature.

Both the New York and Delaware redemption statutes allow a director participating in an improper redemption to seek contribution from other directors. N.Y. Bus. Corp. § 719(c) ("Any director against whom a claim is successfully asserted under this section shall be entitled to contribution from the other directors who voted for or concurred in the action upon which the claim is asserted."); 8 Del. C. § 174(b) ("Any director against whom a claim is successfully asserted under this section shall be entitled to contribution from the other directors who voted for or concurred in the unlawful dividend, stock purchase or stock redemption."). Paladini's claim, if any, is contingent and inchoate until he first becomes liable on a judgment and actually pays more than his share of any damages.

Accordingly, Paladini's contribution claim is unripe. Indeed, at a hearing in the New York District Court Action, Judge Holwell agreed that the claim is not ripe. *See* NY Tr. 28:3-4 ("If you are talking about a right to contribution that's not ripe yet").

## AN INJUNCTION IS APPROPRIATE

Paladini's arguments against an injunction depend on his claims being characterized as personal. They are not, they are derivative, as Paladini argued when it benefitted him to do so. The requirements for the issuance of a preliminary injunction are a showing of (1) irreparable harm if the injunction is denied, (2) a likelihood of success on the merits, (3) a balancing of hardships and (4) the public interest favors the relief. *Kos Pharms, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

Probability of success on the merits is established. Paladini is usurping the Liquidation Trustee's exclusive power to assert claims for general harms in violation of the Plan and Bankruptcy Code section 544.

Likewise, the second element, irreparable harm, is satisfied both because Paladini is usurping the Liquidation Trustee's exclusive standing to assert claims for general harms, and because Paladini is violating the Bankruptcy Code's priority scheme for his benefit and to the detriment of the estate's other stakeholders. In addition, Paladini's improper lawsuit, if allowed to proceed, may give rise to inconsistent verdicts, a consideration that the Second and Seventh Circuits emphasized in holding that creditors have no standing to assert claims for indirect injuries. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-02 (2d Cir. 1989); *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1346-50 & n.9 (7th Cir. 1987)). Absent an injunction, Martillo also is harmed by having to defend against two lawsuits asserting the same claims.

15

The third element, balance of harms, favors the Liquidation Trustee because Paladini cannot be harmed by an injunction that would do no more than prevent him from maintaining claims that he has no standing to assert.  By contrast, the Liquidation Trustee is harmed in the absence of an injunction due to the estate's loss of control over the claims, and Martillo is harmed by having to defend against duplicative lawsuits with the risk of potentially inconsistent results.

The last element, public interest, clearly favors the Liquidation Trustee, given the Bankruptcy Code's overriding policy of promoting an orderly distribution and preventing a "race to the courthouse" among creditors. *Cf. Paul*, 884 F.2d at 701.  In addition, were the Court not to enjoin the Paladini Action, the Court would reward Paladini for his duplicitous action.

## THE MOTION TO DISMISS

### *Subject Matter Jurisdiction*

Paladini first contends that the Court should dismiss the Complaint pursuant to Rule 12(b)(l), as the same is made applicable to this adversary proceeding by Bankruptcy Rule 7012, for lack of subject matter jurisdiction. *See* Paladini Memorandum at 1, 6-10; *see also* Fed. R. Civ. P. 12(b)(l); Fed. R. Bankr. P. 7012(b). In so arguing, Paladini mischaracterizes the relief sought in the Complaint (and by extension the Injunction Motion).

The Liquidation Trustee is not asking this Court to assert jurisdiction over the Paladini Action or to compel Paladini to litigate any alleged claims he may have against Martillo before this Court instead of the New York District Court. Rather, the Liquidation Trustee is asking this Court to enjoin Paladini from continuing to prosecute the Paladini Action because the claims he seeks to assert against Martillo belong to the Liquidation Trustee as the successor-in-interest to the Debtors' estates.

It is clear that this Court may enjoin Paladini from prosecuting the Paladini Action. This Court unquestionably has subject matter jurisdiction over the claims that Paladini seeks to prosecute against Martillo. In this regard, Paladini's reliance upon *In re Johns-Manville Corp.,* 517 F3d 52 (2d Cir. 2008), *rev'd sub nom. Travelers Indemnity Co. v. Bailey,* 129 S. Ct. 2195 (2009), is misplaced.  In *Bailey,* the United States Supreme Court held that the terms of a bankruptcy court's order confirming a plan of reorganization and enjoining direct actions against a nondebtor third party were enforceable, as the order became final after direct review and thus could not be challenged on jurisdictional grounds years later as part of a challenge to a subsequent related order. *Bailey,* 129 S. Ct. at 2203.

Paladini's challenge to the Complaint as being beyond this Court's subject matter jurisdiction under Section 1334(b) of Title 28 of the United States Code (the "Judicial Code") is wrong.  The Complaint seeks to enjoin Paladini from prosecuting causes of action that belong to the Liquidation Trustee. As such, the Complaint arises under and in a case under Chapter 11 of the Bankruptcy Code and is related to such a case.  The Court clearly has the

17

authority and the jurisdiction to enforce its orders, here the Confirmation Order. *In re Continental Airlines, Inc.*, 279 F.3d 226, 230-31 (3d Cir. 2002).

### ***The Complaint Is Sufficiently Pled***

In addition to his arguments under Civil Rule 12(b)(1), Paladini contends that the Complaint should be dismissed for failure to state a claim upon which relief may be granted. Paladini first contends that the Complaint's causes of action must fail because there is no "underlying" cause of action in respect of which the Liquidation Trustee is seeking injunctive relief.

The argument fails based on the authority granted to this Court by Section 105(a) of the Bankruptcy Code and by Section 1651(a) of the Judicial Code, the latter of which is commonly referred to as the "All Writs Act," to grant the injunctive relief that the Liquidation Trustee seeks in the Complaint. *See* 11 U.S.C. § 105(a); 28 U.S.C. § 1651(a). Pursuant to that authority, the Court need not require the Liquidation Trustee to assert an "underlying" cause of action for the Complaint to withstand dismissal under Civil Rule 12(b)(6), and may grant the relief requested in the Complaint in order to preserve and protect the Confirmation Order and this Court's exclusive jurisdiction over the matters enumerated in the Plan, including those matters relative to the Redemptions. *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1099-1102 (11th Cir. 2004) (discussing federal courts' power to issue injunction under All Writs Act and noting traditional factors supporting injunctive relief need not be shown).

18

A complaint is only required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. As the United States Supreme Court has made clear, the purpose of this requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1958)). The Liquidation Trustee's Complaint is sufficiently specific to survive the motion to dismiss.

### STERN V. MARSHALL DOES NOT APPLY

During the pendency of the briefing on the Injunction Motion, the United States Supreme Court decided *Stern v. Marshall*, 564 U.S. ___, 131 S.Ct.2594, 2011 WL 2472793 (U.S. June 23, 2011) ("*Stern*"), a ruling which created great uncertainty within the bankruptcy bench and bar. The Court requested that the parties submit supplemental briefs addressing the impact, if any, of *Stern* on the Injunction Motion. The Court is fully satisfied that its concern was unnecessary. *Stern* has no bearing whatsoever on the Injunction Motion.

In essence, *Stern* holds that bankruptcy courts do not have authority to enter final judgments on state law counterclaims. 131 S. Ct. 2594, 2620 (2011). The Supreme Court urged a narrow reading of *Stern*. Here, there are no state law counterclaims. More directly and dispositive of any *Stern* implications, the Supreme Court explicitly ruled that a bankruptcy court has authority to enter a final judgment where "the action at issue stems from the bankruptcy itself." 131 S. Ct. at 2618. The Injunction Motion does not raise any

substantive or state law issues. It involves the most basic and intrinsic authority of this or

any court – the authority to enforce its order. The order the Court is enforcing is the

Confirmation Order which the Court clearly had jurisdiction and authority to issue and which

enjoins Paladini from proceeding with the Paladini Action.

## CONCLUSION

For all of the foregoing reasons, the Court will enter an order denying the Motion to

Dismiss and enjoining prosecution of the Paladini Action.


Dated: November 2, 2011

KEVIN GROSS, U.S.B.J.