# EXHIBIT 4

# SETTLEMENT TERM SHEET
## SUMMARY OF PROPOSED TERMS AND CONDITIONS
### JUNE 2, 2010

This summary of the principal terms and conditions ("Summary") of a proposed settlement has been prepared exclusively for consideration by those parties listed as Settling Parties below (each a "Settling Party" and, collectively, the "Settling Parties"). The proposed settlement described in this Summary does not constitute a binding offer or agreement by any Settling Party or any of their respective affiliates or subsidiaries, and the obligations of any of these parties shall be only those obligations set forth in the definitive agreement approved, executed and delivered by the Settling Parties (the "Settlement Agreement") except that each Settling Party agrees that (i) it will negotiate in good faith to consummate the Settlement Agreement and all other documents contemplated thereby, and (ii) each Settling Party will seek approval of the Settlement Agreement by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

Reference is made to that certain stipulation by and among the Settling Parties dated December 18, 2009 and so ordered by the Bankruptcy Court on December 21, 2009 and any subsequent stipulations and orders of the Bankruptcy Court related thereto (the "Stipulation") and to that certain Escrow Agreement dated October 26, 2009, between Cynergy Data, LLC (now known as CD Liquidating Co., LLC) and Wilmington Trust Company as Escrow Agent (the "Existing Escrow Agreement").

Reference is also made to (1) the Objection of the Term B Parties and Second Lien Parties to Debtors' Notice of Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Cure Amounts, (2) the Objection by Moneris Solutions, Inc. to the Proposed Assumption and Assignment of Assumed Contracts and Proposed Cure Amounts and (3) the Response of Cynergy Holdings LLC to (i) Objection of Term B Parties and Second Lien Parties to Debtors' Notice of Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Cure Amounts and (ii) Debtors' Motion for an Order Pursuant to Sections 105, 363, 365, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, Among Other Things, (a) Approving the Sale of the Assets Free and Clear of All Liens, Claims and Encumbrances; (b) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Granting Related Relief as Requested (each an "Objection" and, collectively, the "Objections").

**Summary of Settlement Terms**

Settling Parties:

**Harris/Moneris**

Harris N.A. and Moneris Solutions, Inc., in its capacity and as agent for Harris N.A. or their successors or assigns as BIN Sponsor to Purchaser (collectively, "Moneris")

**Term B Parties and Second Lien Parties** (collectively, "Term B Parties")

Dymas Funding Company LLC, individually and as agent for the Term B Lenders and as agent for the Second Lien Lenders ("Dymas")

Ableco Finance LLC, as Term B Lender and as Second Lien Lender

A3 Funding LLC, as Term B Lender and as Second Lien Lender

Garrison Credit Investments I LLC, as Term B Lender

**Term A Parties**

Comerica Bank, as a Term A Lender and as agent for the Term A Lenders

Wells Fargo Capital Finance, LLC, formerly known as Wells Fargo Foothill, LLC, as a Term A Lender

Comerica Bank, as lender to Cynergy Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC and as agent

**Debtors**

CD Liquidation Co., LLC, f/k/a Cynergy Data, LLC

Cynergy Data Holdings, Inc.

2

CD Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC

**Purchaser**

Cynergy Holdings, LLC and Cynergy Data, LLC  or each of their successors and assigns as ISO under the BIN Sponsor Agreement (collectively "Purchaser")

Settling Parties shall include the successors and assigns of each of the foregoing entities.

| | |
|---|---|
| Closing Date: | No later than July 29, 2010 (the "Closing Date"); unless otherwise agreed to by the parties. |
| Settlement Escrowed Funds: | Upon the earliest of the following: the date on which an order of the Bankruptcy Court is issued (x) confirming the Debtors' plan of reorganization, if this settlement is incorporated into the plan or (y) approving the Settlement Agreement; the  Escrowed Funds, as such term is defined in the  Existing  Escrow  Agreement  in  the  amount  of $20,004,327.49 less amounts released from the Escrowed Funds prior to such date pursuant to the Stipulation (the "Settlement Escrowed Funds") shall be deposited into a segregated, interest bearing (no risk), escrow account (the "Settlement Escrow Account") with an unrelated, third party, escrow agent acceptable to each of the Settling Parties (Wilmington Trust Company, being deemed an acceptable escrow agent) subject to an escrow agreement in form and substance acceptable to the Settling Parties (the "Settlement Escrow Agreement"). The foregoing amount includes rolling reserve releases which were included in accounts payable of the Debtor but not paid prepetition in the amount of $302,011.82. Until the time set forth in the foregoing sentence, the Settlement Escrowed Funds shall remain in the current Escrow Account as defined in and pursuant to the Existing Escrow Agreement for distribution under the existing Stipulation.  The Settlement Escrowed Funds shall be  held in the Settlement Escrow Account to be  disbursed  in  accordance  with  the  Indemnification Coverage provisions herein and as cash collateral ("Cash Collateral") for (a) the secured claims of the Term A Parties, and the Term B Parties for obligations outstanding under the prepetition and postpetition financing facilities (to be defined in the Settlement Agreement) in the amounts set forth on a schedule attached to the Settlement Agreement |

3

which schedule shall be updated on and as of the Determination Date (as defined below), respectively, including for any potential revived secured claim on account of payment by the Term A Parties or Term B Parties under the guaranty of the Indemnifying Parties' obligations (described below), and (collectively, the "Term A Parties Claims" and collectively, the "Term B Parties Claims") (b) the secured claims of Moneris for the Indemnification set forth herein.

Prior to and including November 3, 2014 (the "Determination Date"), the only distributions that may be made from the Settlement Escrow Account are (a) are monthly disbursements from net accrued interest (net of expenses under the Settlement Escrow Agreement) earned on the Settlement Escrowed Funds in the Settlement Escrow Account to Comerica Bank, as Agent for the Term A Lenders, for application to the indebtedness of Debtors to the Term A Parties until paid in full, and then to Dymas Funding Company LLC, as Agent for the Term B Parties for application to the indebtedness of Debtors to the Term B Parties until paid in full ("Interest Payments"), and (b) on account of Indemnification Payments to Moneris as set forth herein. Interest Payments and Indemnification Payments continue after the Determination Date as set forth below.

After the Determination Date, the only distributions that may be made from the Settlement Escrow Account are to Moneris, the Term A Parties or the Term B Parties as provided below. After the Determination Date, the Term A Parties, Term B Parties, Purchaser and Moneris will determine the expected present value of the remaining Cure Amount under a methodology acceptable to the parties and distribution of the remaining Settlement Escrowed Funds, as acceptable to such parties. Until such time as agreement is reached and definitive documentation acceptable to Moneris, Purchaser, the Term A Parties (unless paid in full), and the Term B Parties is fully executed with respect to the transaction in the foregoing sentence, the Indemnification survives and Indemnification Payments and Interest Payments shall continue to be made from the Settlement Escrow Account. So long as the Indemnification survives, no other entity besides Moneris, the Term A Parties, the Term B Parties and Purchaser to the extent of Purchaser's subrogation rights set forth herein, will have an interest in the Settlement Escrow Account and

4

the Settlement Escrow Account will not be disposed of or encumbered other than as set forth herein.

The Settlement Escrow Agent's fees and expenses shall be provided for and paid first from the assets of the Debtor's estate other than the Settlement Escrowed Funds in the Settlement Escrow Account pursuant to the confirmed plan, and any shortfall shall be paid from accrued interest earned on the funds in the Settlement Escrow Account. In no event shall the principal amount of the Settlement Escrowed Funds in the Settlement Escrow Account be used to pay fees and expenses of the Settlement Escrow Agent.

Indemnified Parties:

Indemnification of each of Moneris Solutions, Inc. and Harris N.A. and each of their respective parents, subsidiaries, affiliates and their respective shareholders, partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling each of them or any of their affiliates (each being an "Indemnified Party" and collectively, the "Indemnified Parties").

Indemnifying Parties:

Debtors, on a limited recourse basis (recourse limited to and capped at the principal amount of the Settlement Escrowed Funds) ("Indemnifying Party"). If the Term A Parties elect after the Determination Date, and subject to definitive agreement executed by Moneris, the Term A Parties, the Term B Parties, and Purchaser, to apply all or a portion of the Settlement Escrowed Funds to their Term A Parties Claims or Term B Parties Claims, as applicable, as permitted under that definitive agreement, then the obligations of the Indemnifying Parties under the Settlement Agreement will be severally guaranteed by the Term A Parties allocated as determined by the Term A Parties, and the amount of such guaranty shall be capped at the principal amount of the Settlement Escrowed Funds (excluding the amount of the Interest Payments received by the Term A Parties) applied by the Term A Parties to the Term A Parties Claims. If at the time of such election or any given time thereafter, either (i) Wells Fargo Capital Finance, LLC is no longer a subsidiary of an FDIC insured National Association providing banking services or Comerica Bank is no longer an FDIC insured Texas banking corporation or (ii) the rating by any of S&P, Moodys or Fitch of the senior debt of any Term A Party (or

5

its parent as applicable) is no longer investment grade, then such Term A Party may not apply any of the Settlement Escrowed Funds (other than Interest Payments as provided above) to its Term A Party Claims unless such Term A Party posts collateral, a letter of credit in favor of Moneris or some other form of security agreeable to Moneris, in its sole discretion. The Term B Parties may not apply any portion of the Settlement Escrowed Funds unless and until the Term B Parties post collateral, a letter of credit in favor of Moneris or some other form of security agreeable to Moneris, in its sole discretion. Following payment in full of the Term A Parties Claims, the Term B Parties may substitute and replace the Term A Parties as Guarantors under an assumption agreement reasonably acceptable to the Term A Parties, Term B Parties, Purchaser and the Indemnified Parties ("Assumption Transaction"), including both (a) a release of the Term A Parties, and (b) an assumption by the Term B Parties of all of the obligations of the Term A Parties in the Settlement Agreement, including indemnification of the Indemnified Parties for amounts applied by the Term A Parties to each of their Term A Parties Claims from the Settlement Escrowed Funds. If following payment in full of the Term A Parties Claims, the Term B Parties do not timely enter into an Assumption Transaction, all of the remaining Settlement Escrowed Funds shall be released to Moneris and held in accordance with the Bin Sponsor Agreement and each applicable Merchant Agreement. The Term A Parties, allocated as determined by the agreement of the Term A Parties, will severally, and after an Assumption Transaction, the Term B Parties will as determined by agreement of the Term B Parties, severally, guarantee in favor of Moneris the Indemnification Payments capped at the principal amount of the Settlement Escrow Account applied, respectively, by the Term A Parties or the Term B Parties to their respective Term A Parties Claims or Term B Parties Claims. Any payments by a Term A Party (or Term B Party as the case may be) under its guaranty of payment shall revive the secured claim against the Debtors of the paying Term A Party (or Term B Party as the case may be) to the extent of such payments.

Notwithstanding anything to the contrary (and without expanding any obligation of any Term A Party or Term B Party set forth above), in no event shall any Term A Party or Term B Party have any monetary or indemnity obligations to make any payments under its guaranty to

6

Moneris or a merchant (i) until such party elects after the Determination Date to apply the Settlement Escrowed funds to its respective Term A Parties Claims or Term B Parties Claims or (ii) in excess of the Settlement Escrowed Funds (exclusive of Interest Payments) that are applied in satisfaction of the Term A Parties Claims of such Term A Party or Term B Parties Claims of the Term B Party less payments previously made under the guaranty, and with respect to a particular merchant, in excess of the Settlement Escrowed Funds designated for such merchant's account; provided that nothing herein, including the cap and limitations on recourse with respect to Indemnification Payments set forth herein, limits the rights and remedies of Moneris at law or in equity for breach of the Settlement Agreement.

| | |
|---|---|
| Indemnification Coverage: | Where (1) the applicable merchant has been identified as having an unfunded rolling reserve in an amount per merchant as set forth on an agreed to Schedule to the Settlement Agreement which amount has been escrowed in the Existing Escrow Account minus (i) any distributions made on account of that merchant pursuant to the Stipulation and (ii) any prior Indemnification Payments made pursuant to the Settlement Agreement the difference of which represents all or part of the amount sought as an Indemnification Payment for that merchant, irrespective of any ISO level reserves, sub-ISO level reserves, QM reserves or any other reserves from the merchant to fund those losses pursuant to any agreement related to the BIN Sponsor Agreement, (2) the applicable merchant (i) has processed transactions resulting in settlement proceeds which are insufficient to cover such Merchant Loss (defined below) (to the extent of such insufficiency); (ii) was no longer processing transactions with the Debtors and/or is not currently processing transactions with the Purchaser, (iii) has closed merchant accounts with the Debtors and/or the Purchaser or (iv) has requested a return of, or Purchaser or Moneris consistent with their ordinary course of business have determined to return, part or all of such merchant's reserves in accordance with and as provided by the terms of the applicable merchant processing agreement, and (3) the requested payment is of the type of payment for a Merchant Loss (as defined herein) that would be sought to be recovered from a reserve account if such account was funded by the Debtors as of the Petition Date, the Indemnifying Parties shall provide |

7

indemnification (the "Indemnification") to the Indemnified Parties for such merchant for all proceedings, actions, claims, suits, liabilities, losses, costs or expenses of any kind (including, but not limited to fees and expenses of legal counsel) attributed to a merchant, including all chargebacks, claims, fees, fines, returns, uncollected amounts due from such merchant, fraudulent practices of such merchant, attorneys fees incurred for collection, or requests for repayment of reserves (each a "Merchant Loss").

If the Indemnified Parties fail to take timely action to seek an Indemnification Payment (action within 7 Business Days of receipt by Moneris of a certification by Purchaser of a Merchant Loss would be considered timely), then Purchaser may send written notice to Moneris identifying such failure consistent with the terms of the Settlement Agreement and providing details of any Merchant Loss certified by an officer of Purchaser and if Moneris fails to take action within 7 Business Days of such notice, then to the extent such Merchant Losses otherwise would have been indemnified by the Indemnifying Parties, Purchaser shall be subrogated to the rights of the Indemnified Parties with respect to such Merchant Loss.

| | |
|---|---|
| Timing of Indemnification Payment | Moneris will give notice to (a) the Settlement Escrow Agent, (b) Purchaser, (c) Comerica, as agent for Term A Parties, or, after an Assumption Transaction, Dymas, as agent for the Term B Parties, and (d) one individual designee of Comerica or, after an Assumption Transaction, of Dymas, on any Business Day (a "Payment Date"), on which Moneris wishes to collect a payment pursuant to the Indemnification (an "Indemnification Payment"). If on any such Payment Date, the Settlement Escrow Agent receives not later than 11:30 a.m. (Chicago, Illinois time) a written notice from Moneris, specifying (i) that an Indemnification Payment is to be made on such Payment Date, (ii) the principal amount of such Indemnification Payment and (iii) to the knowledge of Moneris, all of the applicable conditions to such Indemnification Payment have been satisfied, the Settlement Escrow Agent will transfer from the Settlement Escrow Account or, if for any reason funds are insufficient in the Settlement Escrow Account, the Term A Parties or Term B Parties, as applicable, will transfer by, not later than 3:30 p.m. (Chicago, Illinois time), on such Payment Date to Moneris' demand deposit account, in immediately available funds, an amount equal to such |

8

Indemnification Payment. In the event that such notice is received by Settlement Escrow Agent later than 11:30 a.m. (Chicago, Illinois time), such Indemnification Payment will be made on the next succeeding Business Day by no later than 3:30 p.m. (Chicago, Illinois time). Within 35 Business Days after the applicable Payment Date occurs, Comerica (or the Term B Parties' Agent if applicable after an Assumption Transaction), may provide notice of a request for return and recovery from Moneris of all or part of any such Indemnification Payment made on the Payment Date only because such payment was paid in error and was not otherwise due and owing to Moneris or a merchant. The Settlement Agreement will provide for a dispute mechanism if such a notice is delivered.

| | |
|---|---|
| Security Provisions: | The obligations of Indemnifying Parties to indemnify the Indemnified Parties shall be secured by a perfected first priority security interest in the Settlement Escrow Account, including execution of a Demand Account Control Agreement, reasonably satisfactory to Moneris. |
| Litigation: | Hearing dates and other scheduling dates set forth in the Stipulation remain until Bankruptcy Court approval of the Settlement Agreement<br>Withdrawal of all Objections upon approval of Settlement Agreement |
| Consents: | Purchaser<br><br>Creditors Committee<br><br>Bankruptcy Court Approval<br><br>Must bind any trustee - chapter 7 or 11. |
| Releases: | Full release of any and all claims against Moneris arising on or before the date of the Bankruptcy Court order approving the Settlement Agreement and related in any way to the Settlement Escrowed Funds, Bin Sponsor Agreement or the Debtors, by the Debtors, Term A Parties, Term B Parties, Garrison Credit Opportunities Holdings, L.P. and Committee, except with respect to: (i) claims as set forth in the Settlement Agreement, (ii) claims for breach under the Settlement Agreement and (iii) claims for disgorgement by Moneris under the Order dated December December 21, 2009 (Docket No. 498) by the Bankruptcy Court in Debtors' bankruptcy cases regarding, among other things, |

9

releases of escrowed funds, <u>provided, however</u>, that claims on account of such potential disgorgement obligations shall be included in the claims released if none of Debtors, Term A Parties, Term B Parties, or the Committee provide to Moneris, within 35 Business Days after the date upon which the Bankruptcy Court enters an order approving the Settlement Agreement, a notice of request for return and recovery of all or part of any payments received under the Order. Release by Purchaser of claims against Moneris, but solely to the extent relating to the Indemnification Payments received and used by Moneris to cover a Merchant Loss and not otherwise disgorged.

For the avoidance of doubt, the Settlement Agreement does not release claims as between the Debtors and Purchaser.

Full release of any and all claims arising on or before the date of the Bankruptcy Court order approving the Settlement Agreement by Moneris of the Debtors, Term A Parties, Term B Parties, Garrison Credit Opportunities Holdings, L.P. and Committee related to the Settlement Escrowed Funds, Bin Sponsor Agreement or the Debtors except (i) claims as set forth in the Settlement Agreement, and (ii) claims for breach under the Settlement Agreement For the avoidance of doubt, the Settlement Agreement does not release claims by Moneris against Purchaser for liabilities of the Debtors which were assumed by Purchaser, or adversely affect, in any way any rights, claims and interests of the Purchaser under the Sale Order, provided further that nothing in this sentence or in the other provisions of the Settlement Agreement shall provide the Purchaser with rights or remedies which are more expansive than those that are currently held by the Purchaser under the Sale Order except to the extent that such rights or remedies are expressly provided for in the other provisions of the Settlement Agreement.

Legal Fees and Costs

Immediately upon Bankruptcy Court approval of the Settlement Agreement, reimbursement from the Debtors' estate as part of the cure of the assumption of the Bin Sponsor Agreement of any and all attorney fees, expenses and disbursements incurred by Moneris in connection with Debtors' bankruptcy cases after October 26, 2009 through approval of the Settlement Agreement by a final, nonappealable order issued by the Bankruptcy Court; which amount shall not be deducted from the Settlement Escrowed Funds.

10

Permanent Injunction:

Permanent injunction issued by the Bankruptcy Court of all parties in interest in the Bankruptcy Cases against pursuit of claims (i) released under the Settlement Agreement or (ii) related to reserves identified in the Bankruptcy Cases as part of the Settlement Escrowed Funds, except such injunction shall exclude and not apply to (x) payments provided for under the Settlement Agreement or requests made by a merchant for return of a merchant reserve pursuant to and in accordance with the terms of the applicable merchant processing agreement by and among the merchant, the Debtors and Moneris and the Bankruptcy Court order approving the Settlement Agreement which portion of a reserve was not previously paid (and not otherwise disgorged) to Moneris and/or Purchaser as an Indemnification Payment and (y) except as specifically released herein by the Purchaser, any and all claims, rights and interests of Purchaser arising under the Sale Order.

Merchants:

For clarification, prior to and after a Determination Date, merchants seeking return payment, in part or in full, of a reserve which was designated as a Rolling Reserve and deposited into the Cure Reserve as defined in the Sale Order, may contact a representative at Purchaser requesting such return in accordance with the applicable merchant processing agreement. Payment of any such reserve to a merchant is subject to the terms and conditions of the applicable merchant processing agreement by and among the merchant, the Debtors, Purchaser, as assignee and Moneris.

Bankruptcy Court Approval:

Except as otherwise provided for, the Settlement Agreement is subject to the approval of the Bankruptcy Court pursuant to a final and non-appealable order therefrom.

Undersigned parties consent and agree to use best efforts to obtain all court orders necessary to effectuate the transactions contemplated in Settlement Agreement.

As soon as practicable, and in any event within 5 days after the Settlement Agreement is executed, the Debtors will file a motion in the Bankruptcy Court seeking approval thereof.

If the Bankruptcy Court denies the Debtors' motion seeking approval of the Settlement Agreement, the Settlement Agreement shall terminate. In the event of a termination

11

pursuant to the preceding sentence, none of the terms and statements of the Settlement Agreement, nor any part of this Summary or any correspondence between or statements of the Settling Parties related to the negotiation, drafting or approval of this Summary or the Settlement Agreement shall be argued or deemed to be an admission against such party's interest in any litigation between the Settling Parties.

**Representations and Warranties:** Customary for this type of transaction, including, the Settling Parties shall each represent and warrant that: (a) each such entity has full power and authority to enter into and execute the Settlement Agreement and to carry out the obligations and covenants created thereby; (b) the execution and delivery of the Settlement Agreement and the performance of the obligations and covenants created thereunder have been duly authorized by all necessary corporate action on the part of each such party, and no shareholder or other approval is necessary in order to bind each such party thereto; and (c) the execution and delivery of the Settlement Agreement and the performance of the obligations and covenants created thereby are in the best interest of each such party and will not result in any conflict with or breach or violation of, or default under, the certificate of incorporation or by-laws of such party. Representation by Garrison Credit Investments I LLC that Garrison Credit Opportunities Holdings, L.P. was never and is not a Term B Lender or Second Lien Lender and has no claim against or interest in the Debtors.

Representation by Debtors that, except as set forth on the Disclosure Schedules to the Settlement Agreement which Disclosure Schedules shall include a listing of all unfunded merchant reserves per merchant with a description of any outstanding issues or disputes associated therewith, to their knowledge and as of October 26, 2009, there are no monies owing by the Debtors related to or arising out of unfunded merchant reserves.

**Covenants** Settlement Escrow Account documents to provide for certifications made by the Settlement Escrow Agent to each Settling Party on the 5th Business Day of each month as to the holdings and transactions with respect to the Settlement Escrowed Funds for the prior months end, including interest received during such month and the type and source of such interest and disbursements of interest. Investments by Settlement Escrow Agent must be acceptable to each of

12

Moneris, each Term A Party and after an Assumption Transaction, Dymas Funding Company LLC.

| | |
|---|---|
| Conditions Precedent: | Customary and appropriate for transactions of this type, including, without limitation, (i) execution and delivery of satisfactory definitive documentation customary for such transactions, (ii) bankruptcy court approval, (iii) obtaining necessary third party approvals (if any), (iv) prompt delivery to Moneris of drafts of the Settlement Escrow Agreement, Settlement Agreement, and pleadings to approve the Settlement Agreement; and (v) withdrawal with prejudice of objections by Garrison Credit Opportunities Holdings, L.P. |
| Events of Default: | Events of default customary and appropriate for a transaction of this kind and nature, including breach of any material obligation under the Settlement Agreement or Stipulation; certain bankruptcy or insolvency events. |
| Remedies for Default: | Customary and appropriate for a transaction of this kind and nature, including payment of legal fees and expenses for prevailing, non-breaching parties by breaching parties. |
| Acknowledgments: | Each of the Settling Parties acknowledges and agrees (a) that the Settlement Agreement, only to the extent it pertains to each Settling Party, and the transactions and documents contemplated thereby, only to the extent it pertains to each Settling Party, are fair and reasonable and are not unconscionable or the result of any fraud, duress, coercion, pressure or undue influence exercised by any party upon the others or by any person or persons; (b) that it has had the opportunity to obtain independent legal advice from counsel of its own selection with respect to the Settlement Agreement and the transactions and documents contemplated thereby and its respective rights and obligations thereunder; and (c) that it understands its respective rights and obligations thereunder and the relevant facts. |
| | Each of the Settling Parties acknowledge that the Settlement Agreement is entered into solely because of desire on the part of all concerned to bring to a close, and to foreclose, mutually vexatious litigation and shall never be treated as, or claimed to be, an admission of liability, fault, wrongdoing, injury or damages, all of which are, and remain, disputed. |

13

<u>Settlement Agreement Jointly Drafted</u>. The Settling Parties acknowledge that they jointly contributed to the drafting of the Settlement Agreement. In the event of ambiguity, no rule of contract interpretation or rule of contract construction based on an allegation that one party to the Settlement Agreement drafted the Settlement Agreement shall be applied to construe the Settlement Agreement for or against any party.

Challenges:

Any action relating to the Settlement Agreement shall be brought in the Bankruptcy Court unless and until the bankruptcy cases are closed by order of the Bankruptcy Court, after which such actions may be brought in the federal or state courts of New York and the Settling Parties consent to the personal jurisdiction of such court for such an action and to the venue of such court.

Business Day:

A day, other than a (i) Saturday, (ii) Sunday, or (iii) a day on which the banks in Illinois are not open for business.

Governing Law:

The Settlement Agreement shall be governed by, and construed and interpreted in accordance with, the internal laws of the State of New York, without regard to its choice of law provisions.

*[Signature pages follow.]*

14

Accepted and agreed to this 2nd day of June, 2010.

**DYMAS FUNDING COMPANY LLC**
**individually and as agent for the Term B**
**Lenders and as agent for the Second Lien**
**Lenders**

By: _____
Name *Eric Miller*
Title: *Managing Director.*

**ABLECO FINANCE LLC**

By: _____
Name *Eric Miller*
Title: *Senior Vice President*

**A3 FUNDING LP**

By: _____
Name *Eric Miller.*
Title: *Vice President*

**GARRISON CREDIT INVESTMENTS I LLC**

By: _____
Name
Title:

15

Accepted and agreed to this 2nd day of June, 2010.

**DYMAS FUNDING COMPANY LLC**
**individually and as agent for the Term B**
**Lenders and as agent for the Second Lien**
**Lenders**


By: _____
      Name
      Title:


**ABLECO FINANCE LLC**


By: _____
      Name
      Title:


**A3 FUNDING LP**


By: _____
      Name
      Title:


**GARRISON CREDIT INVESTMENTS I LLC**

By: _____
      Name    **JULIAN WELDON**
      Title:      **SECRETARY**

15

**MONERIS SOLUTIONS, INC.**

By:_____
    Name
    Title:

**CD LIQUIDATION CO., LLC**

By:_____
    Name
    Title:

**CYNERGY DATA HOLDINGS, INC.**

By:_____
    Name
    Title:

**CD LIQUIDATION CO. PLUS, LLC**

By:_____
    Name
    Title:

16

10207055.27
31210-2015

**MONERIS SOLUTIONS, INC.**

By:_____
        Name
        Title:


**CD LIQUIDATION CO., LLC**

By:_____
        Name  *Charles M. Moore*
        Title: *Chief Restructuring Officer*


**CYNERGY DATA HOLDINGS, INC.**

By:_____
        Name *Charles M. Moore*
        Title: *Chief Restructuring Officer*


**CD LIQUIDATION CO. PLUS, LLC**

By:_____
        Name *Charles M. Moore*
        Title: *Chief Restructuring Officer*


16

**CYNERGY HOLDINGS, LLC**

By: _____
     Name
     Title: CEO

**CYNERGY DATA, LLC**

By: _____
     Name
     Title: CEO

**COMERICA BANK**

By: _____
     Name
     Title:

**WELLS FARGO CAPITAL FINANCE, LLC
f/k/a WELLS FARGO FOOTHILL, LLC**

By: _____
     Name
     Title:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF CD LIQUIDATION CO.
PLUS, LLC,** *et al.*

By: _____
     Name
     Title:

10207055.27
31210-2015

**CYNERGY HOLDINGS, LLC**


By:_____
       Name
       Title:


**CYNERGY DATA, LLC**


By:_____
       Name
       Title:


**COMERICA BANK**


By:_____
       Name Vladimir R. Slapak
       Title: Vice President


**WELLS FARGO CAPITAL FINANCE, LLC**
**f/k/a WELLS FARGO FOOTHILL, LLC**


By:_____
       Name
       Title:


**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF CD LIQUIDATION CO.**
**PLUS, LLC,** *et al.*


By:_____
       Name
       Title:

17

Error! Unknown document property name.

**CYNERGY HOLDINGS, LLC**

By:_____
      Name
      Title:


**CYNERGY DATA, LLC**

By:_____
      Name
      Title:


**COMERICA BANK**

By:_____
      Name
      Title:


**WELLS FARGO CAPITAL FINANCE, LLC**
**f/k/a WELLS FARGO FOOTHILL, LLC**

By:_____
      Name   JOHN T. LEONARD
      Title:   MANAGING DIRECTOR

**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF CD LIQUIDATION CO.**
**PLUS, LLC,** *et al.*

By:_____
      Name
      Title:

17