## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CD LIQUIDATION CO., LLC, f/k/a CYNERGY DATA, LLC, *et al.*, | Case No. 09-13038 (KG) |
| Debtors. | **Hearing Date:  October 30, 2012**<br>**Hearing Time:  10:00 A.M.** |

## OBJECTION BY MARCELO PALADINI TO MOTION BY MONERIS SOLUTIONS AND BMO HARRIS BANK NA TO ENFORCE <u>SETTLEMENT AGREEMENT AND FOR RELATED RELIEF</u>

ASCHETTINO STRUHS LLP
Stephen A. Aschettino (SA4072)(admission pending)
Naomi D. Johnson (NJ1566)(admission pending)
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 354-7600
Fax: (866) 260-5527


ELLIOTT GREENLEAF
Eric M. Sutty
1105 Market Street, Suite 1700
Wilmington, Delaware 19801
Tel: (302) 384-9400
Fax: (302) 384-9399


*Attorneys for Marcelo Paladini*

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF FACTS ................................................................................ 4

I.  THIS COURT LACKS JURISDICTION OVER THIS PROCEEDING ON
    THREE SEPARATE GROUNDS ................................................................. 9

    A.  Paladini's Claims Against the Harris Defendants Were Specifically
        Carved Out from the Settlement Order ............................................... 9

    B.  The Bankruptcy Court Lacks Subject Matter Jurisdiction Over This
        Dispute ................................................................................................ 11

        1.  This Is A Dispute Between Non-Debtor Parties ....................... 12

        2.  This Is a Non-Core Proceeding Unrelated to the Debtors' Bankruptcy ............ 13

    C.  The Harris Defendants' Motion Violates Bankruptcy Rule 7001 .............. 16

II. The SDNY Action Consists of Direct, Not Derivative, Claims ......................... 18

    A.  The Claims Against The Harris Defendants Are Personal ......................... 18

III. The Allegations in the Complaint Are In No Way Similar to Those Brought in
     the Martillo Action .................................................................................... 24

CONCLUSION ................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.T. Massey Coal Co. v. Harman Dev. Corp. (In re Sovereign Coal Sales)*,
  Case No. 7-98-01992, 2000 Bankr. Lexis 2092 (Bankr. W.D. Va. Nov. 28, 2000) ...............19

*Bankers Trust Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) ..........................................................................................22

*Bohlen v. United States*,
  623 F. Supp. 595 (C.D. Ill. 1985) ................................................................................20, 22

*Caplin v. Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972) .........................................................................................................19

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) .........................................................................................................19

*Cumberland Oil Corp. v. Thropp*,
  791 F.2d 1037 (2d Cir. 1986) ..........................................................................................22

*E.F. Hutton & Co. v. Hadley*,
  901 F.2d 979 (11th Cir. 1990) .............................................................................19, 21, 23

*Gibson v. Kassover (In re Kassover)*,
  No. 98-43124, 2008 WL 4845757 (Bankr. S.D.N.Y. Oct. 30, 2008) .....................................17

*Goldin v. Primavera FamilienStiftung, Tag Assoc. (In re Granite Partners, L.P.)*,
  194 B.R. 318 (Bankr. S.D.N.Y. 1996) ...............................................................................19

*Goldstein v. Pataki*,
  516 F.3d 50 (2d Cir. 2008) ...............................................................................................22

*Hirsch v. Arthur Anderson & Co.*,
  72 F.3d 1085 (2d Cir. 1995) .................................................................................20, 21, 23

*Hunter v. Citibank*,
  Case No. 09-02079, Dkt. No. 354, p. 8 (N.D. Cal. July 20, 2010) .........................................22

*In re CD Liquidation Co. LLC*
  (December 21, 2010) (No. 09-13038) ................................................................................12

*In re Continental Airlines*,
  203 F.3d 203 (3d Cir. 2000) .............................................................................................19

*In re Gen. Media, Inc.*,
    335 B.R 66 ..........................................................................................................15

*In re Guild and Gallery Plus, Inc.*,
    72 F.3d 1171 (3d Cir. 1996)..........................................................................15

*In re Guimond Farms, Inc.*,
    10 B.R. 177 (Bankr. D. Mass. 1981) ............................................................13

*In re Innovative Communication Co., LLC*,
    Nos. 06-30008, 06-30009, 2008 WL 4755763 (D. VI Oct. 27, 2008)...................18

*In re Marcus Hook Dev. Park, Inc.*,
    943 F.2d 261 (3d Cir. 1991)..........................................................................14

*In re McConaghy*,
    15 B.R. 480 (Bankr. E.D. Va. 1981) ......................................................13, 19

*In re Perkins*,
    902 F.2d 1254 (7th Cir. 1990) .....................................................................18

*In re Porter v. NationsCredit Consumer Discount Co.*,
    295 B.R. 529 (Bankr. E.D.P.A. 2003) ...........................................12, 14, 15

*Mediators, Inc. v. Manney (In re The Mediators, Inc.)*,
    105 F.3d 822 (2d Cir. 1997)..........................................................................19

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984)...................................................................14, 15

*Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Housing and Urban Dev.*,
    175 F.3d 132 (2d Cir. 1999)..........................................................................16

*Quattrone Accountants, Inc. v. IRS*,
    895 F.2d 921 (3d Cir. 1990)..........................................................................14

*Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI)*,
    409 B.R. 720 (Bankr. D. Del. 2009) .............................................................25

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010) .....................................................................13

*Stacy Fuel & Sales, Inc. v. Ira Phillips, Inc. (In re Stacy)*,
    167 B.R. 243 (N.D. Ala. 1994)......................................................................18

*Twin Mfg. Co. v. Blum Shapiro & Co., P.C.*,
    No. 380220, 1992 Conn. Super LEXIS 409 (Conn. Super. Ct. 1992)...................21

STATUTES AND RULES

28 U.S.C. § 1334 .................................................................................................................12, 14, 17

Fed. R. Bankr. P. 7001 .................................................................................................................18

Fed. R. Bankr. P. 7003 .................................................................................................................18

ASCHETTINO STRUHS LLP
Stephen A. Aschettino (SA4072)(admission pending)
Naomi D. Johnson (NJ1566)(admission pending)
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 354-7600
Fax: (866) 260-5527

ELLIOTT GREENLEAF
Eric M. Sutty
1105 Market Street, Suite 1700
Wilmington, Delaware 19801
Tel: (302) 384-9400
Fax: (302) 384-9399

*Attorneys for Marcelo Paladini*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| CD LIQUIDATION CO., LLC, f/k/a CYNERGY DATA, LLC, *et al.*, | Case No. 09-13038 (KG) |
| Debtors. | **Hearing Date:  October 30, 2012**<br>**Hearing Time:  10:00 A.M.** |

**OBJECTION BY MARCELO PALADINI TO MOTION BY MONERIS
SOLUTIONS AND BMO HARRIS BANK NA TO ENFORCE
SETTLEMENT AGREEMENT AND FOR RELATED RELIEF**

Marcelo Paladini ("Paladini"), by and through his undersigned counsel, Aschettino Struhs

LLP, respectfully submits this memorandum of law in opposition to Moneris Solutions, Inc. and

BMO Harris Bank NA's (collectively, the "Harris Defendants") motion (the "Motion") for an

order: (1) enforcing (A) the order approving that certain settlement (the "Settlement") regarding

reconciliation of amounts related to the rolling reserve fund (the "Settlement Order"), (B) the

order confirming (the "Confirmation Order," and together with the Settlement Order, the

"Orders") the Joint Plan of Liquidation (the "Plan") of CD Liquidation Co., LLC, CD

Liquidation Co. Plus, LLC, and Cynergy Data Holdings, Inc. (collectively "Debtors") and (C) compliance with the Plan; and (2) enjoining Marcelo Paladini from prosecuting the action against the Harris Defendants that is currently pending in the United States District Court for the Southern District of New York (the "District Court"), entitled *Marcelo Paladini v. BMO Harris Bank, N.A. and Moneris Solutions, Inc.*, bearing civil action number 12-cv-05178 (the "SDNY Action").

## PRELIMINARY STATEMENT

The Harris Defendants attempt to circumvent the appropriate jurisdiction of a federal district court under the guise of a motion to enforce the prior Settlement Order of this Court. This Court has no jurisdiction over the parties and claims presented in the SDNY Action. Indeed, that dispute is between non-debtor parties and involves claims that are direct and personal to Paladini. And the Settlement Order contains express carve-outs for the types of claims Paladini asserts, and the Plan preserves this carve-out. Accordingly, the Harris Defendants' Motion must be denied.

In July 2012, Paladini filed the SDNY Action against the Harris Defendants. The complaint ("Complaint") alleges various causes of action that resulted in substantial damages to Paladini, personally. Rather than respond to the Complaint in that proceeding, the Harris Defendants strategically proceeded in this Court on the basis of a misguided interpretation of this Court's prior history with Paladini. The Harris Defendants improperly attempt to invoke the jurisdiction of this Court by filing the Motion, purportedly seeking to enforce prior orders in a bankruptcy proceeding that was confirmed almost two years ago. The Harris Defendants argue that the claims Paladini asserted in his Complaint are enjoined by the Settlement and Confirmation Orders and, in any event, are derivative and therefore belong to the estate of the Debtors. The Harris Defendants' arguments could not be more misplaced.

2

First, this Court, respectfully, lacks jurisdiction over the Harris Defendants' motion. Counsel for the Harris Defendants suggest this Court has jurisdiction not only to stay the SDNY Action, but also to permanently enjoin it. Yet Paladini was not even a party to the underlying settlement agreement between the Debtors and the Harris Defendants. That agreement resolved certain claims between the Harris Defendants and the Debtors regarding the Debtors' "Rolling Reserves." The settlement agreement and resulting Settlement Order contains an injunction, the entirety of which the Harris Defendants failed to recite in their Motion, that makes clear that Paladini's claims were not enjoined and that he remained free to bring personal claims against the Harris Defendants. Indeed, Paladini's claims were specifically carved out from the injunction because Paladini anticipated asserting causes of action against the Harris Defendants.

Second, this Court lacks subject matter jurisdiction over the dispute. At the outset, this dispute concerns non-debtor third parties. Neither the bankruptcy estate nor any of the Debtors' creditors have an interest in the outcome. This Court has no authority to determine the potential rights and remedies of such non-debtor third parties. Moreover, this Court lacks jurisdiction because this proceeding is neither "core" nor "related to" the bankruptcy case.

Finally, the Harris Defendants argue that Paladini's claims belong to the bankruptcy estate, and, therefore, such claims were effectively enjoined. However, assuming, *arguendo*, that such analysis is properly within the Court's domain, an analysis of the claims and Paladini's particularized injuries makes clear that they are personal to Paladini and, therefore, not derivative. Indeed, the Liquidation Trustee has not brought any such claims against the Harris Defendants, nor the Trustee supported the Harris Defendants' Motion. Nevertheless, the Harris Defendants rely heavily on a prior action brought before this Court through a motion for injunction, entitled *Paladini v. Martillo* (the "Martillo Action"), in a misguided effort to

demonstrate that the claims belong to the Debtors when the damages that Paladini asserts in his Complaint can only be personal. The Martillo Action involved very different claims between the co-founders and shareholders of the Debtors, along with the Trustee's corresponding adversary proceeding to enjoin the Martillo Action. Moreover, the Martillo Action was dismissed with prejudice as part of an unrelated settlement with Paladini and the Trustee. Accordingly, the Harris Defendants' reliance upon the outcome of the Martillo action is misplaced.

Because this Court lacks subject matter jurisdiction and, in any event, the SDNY Action consists of claims that are personal to Paladini, this Court must disregard the Harris Defendants' improper attempt at forum shopping and deny the Harris Defendants' motion for lack of subject matter jurisdiction.

In the event the Court determines that it has subject matter jurisdiction, it should still dismiss or otherwise deny the Motion because Paladini's claims in the SDNY Action are not derivative. Paladini's claims are personal to him, were expressly carved out of the Settlement Order and preserved in the Confirmation Order, and are therefore not enjoined by this Court's prior Orders, as discussed more fully below. The District Court is the appropriate forum for the dispute between Paladini and the Harris Defendants, including a determination of whether Paladini's claims in the SDNY Action are determined to be derivative. This Court should respectfully defer to the District Court for resolution of the claims between the instant non-debtor parties.

## STATEMENT OF FACTS

Cynergy Data, LLC[1] ("Cynergy") was a provider of payment processing and related merchant services for credit card and other electronic transactions that served approximately

---

[1] While in bankruptcy and after the completion of its Section 363 sale, Cynergy Data, LLC changed its name to CD Liquidation Co, LLC.

80,000 merchants.  BMO Harris Bank, N.A. ("Harris"), as Cynergy's sponsor bank, was the gatekeeper for all funds movements associated with credit card and other electronic transactions for which Cynergy provided processing services.  In addition to Harris's role as Cynergy's sponsor bank, Harris's affiliate and agent, Moneris Solutions, Inc. ("Moneris"), provided certain accounting services to Cynergy.  Moneris was responsible for daily reconciliation of transfers in and out of Cynergy's operating account to ensure the account maintained a zero balance error. Cynergy paid Harris for these additional services.

In July 2009, Moneris claimed that over $21 million of merchant funds should have been, but had not been, deposited and maintained in an account at Harris, per the direction of specific agreements in place between the parties.  As a result of this alleged shortfall in what was referred to as "Rolling Reserves," Harris suspended all funding to Cynergy to initiate the immediate recovery of those funds.  At the time, none of the disputed funds were due to be paid to the underlying merchants.

Harris prepared and presented to Cynergy and Paladini a forbearance agreement (the "Forbearance Agreement").[2]  The Harris Defendants threatened to continue suspending funding if Cynergy and Paladini did not sign the Forbearance Agreement.  Without access to its operating revenues, Cynergy would not be able to operate its business.  More urgently, the Harris Defendants' actions prevented Cynergy from paying commissions (known as "residuals") to its downline agents and affiliates who relied upon such payments from Cynergy for their livelihood. Continued non-payment of these residuals would lead these downlines and agents to move Cynergy's merchants to another processing platform, thus eviscerating Cynergy's business.  And Paladini would then be called on to pay under his personal guarantees and other contractual

---

[2] Harris required that Paladini personally sign the Forbearance Agreement since Paladini was a guarantor of certain agreements that existed with Cynergy's lenders.

covenants. Thus the Harris Defendants, through economic duress, forced Cynergy and Paladini to sign the Forbearance Agreement. The Forbearance Agreement purported to vitiate certain subordination agreements discussed below, the effect of which was to expose Paladini to additional personal liability. Ultimately it was both the existence and the terms of the Forbearance Agreement that bankrupted Cynergy, resulting in the termination of Paladini's employment and personal exposure under the various guarantees and credit faculties Paladini had executed.

On September 1, 2009, Cynergy filed for Chapter 11 protection. The Harris Defendants were creditors in the bankruptcy proceeding, as was. On or about October 28, 2009, The ComVest Group purchased Cynergy for roughly $81 million dollars – more than $40 million less than the amount owed to Cynergy's creditors. Paladini, through his guarantees, was responsible for the shortfall.

On or about June 2, 2010, the Harris Defendants and the Debtor entered the Settlement, which was detailed in a term sheet. The Settlement was approved by the Court through the Settlement Order entered on September 13, 2010 (a copy of which is attached as Exhibit A), discussed more fully below. Paladini, a non-party, was not a signatory to the Settlement agreement.[3]

The Settlement Order contained certain releases for the benefit of the estate. Specifically, the Settlement Order contained the following language:

> Except as expressly permitted by the Settlement Term Sheet, all parties in interest in the Bankruptcy Cases hereby are forever barred, estopped and permanently enjoined from: (a) commencing or continuing in any manner any action or other proceeding,

---

[3] Specifically, the parties to the Settlement were Harris Bank and Moneris Solutions, Dymas Funding Company, LLC, Ableco Finance LLC, A3 Funding LLC, Garrison Credit Investments I LLC, Comerica Bank, Wells Fargo Capital Finance, LLC, CD Liquidation Co., LLC, f/k/a Cynergy Data, LLC, Cynergy Data Holdings, Inc., and CD Liquidation Co. Plus, LLC, f/k/a Cynergy Prosperity Plus, LLC.

asserting, prosecuting or otherwise pursuing any claims, rights or causes of action, (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating perfection or enforcing any lien or encumbrance or (d) asserting a setoff, right of subrogation or recoupment of any kind, against a Selling Party; (i) released under this Order, or the Settlement Term Sheet or (ii) related to reserves identified in the Bankruptcy Cases as part of the Settlement Escrowed Funds; provided, however, that the foregoing provisions shall exclude and not apply to (x) ..., (y) ..., **and (z) with respect to clause (ii) in this paragraph 11 related to the reserved identified in the Bankruptcy Cases should not be construed to preclude Mr. Paladini from asserting claims or defenses to claims asserted against him which claims or defenses are indirectly related to the reserves**, but do not affect the entitlement to, calculation of, ownership, control, or distribution of the reserves, or to preclude any party from asserting claims or defenses against Mr. Paladini or against any other party in interest that is not a Selling Party.

(Settlement Order ¶ 12.) (emphasis added). As the language makes clear, the release specifically carved out claims that were personal to Paladini, going so far as to even include potential claims relating to the Rolling Reserves. Paladini specifically negotiated this language to preserve future claims against the Harris Defendants. The Settlement Order therefore expressly contemplated that Paladini could bring claims at a later date for injuries sustained by him personally.

On December 21, 2010, this Court confirmed the Debtor's Plan pursuant to the Confirmation Order. The Settlement was preserved in the Plan.

In July 2012, Paladini commenced the SDNY Action. In it, Paladini alleges six separate causes of action: (i) economic duress; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of fiduciary duty; (iv) tortious interference with business relations; (v) general malpractice; and (vi) negligence. Paladini's damages arise as a result of his position as majority shareholder and guarantor of Cynergy, as well as his status as a signatory to the Forbearance Agreement.

The Complaint also details Paladini's particularized, personal injuries. Paladini outlines how his fourteen-year reputation as an award-winning entrepreneur and successful CEO of a leading payments processing company and person of the highest integrity was damaged beyond repair. (Compl. ¶167). Rumors in the industry created by Harris and others, insinuations that Paladini had some direct involvement in causing the alleged shortfall of $21 million of merchant funds and the Debtors' former CFO purportedly fleeing the country all supported a false assumption in the industry that Paladini had siphoned funds from the Debtors. (Compl. ¶168-170). The Complaint further details how this harm to his reputation will forever bar him from working in the electronic payments industry. The only employment he was able to obtain was from ComVest, the ultimate purchaser of Cynergy's assets, which was a self-serving attempt to glean as much of Paladini's knowledge about the Debtors before subsequently discharging him. (Compl. ¶171-175).

Additionally, Paladini also details in the Complaint how he was personally harmed by being forced to sign the Forbearance Agreement, which subjected Paladini to personal liability (Compl. ¶177-183) and ultimately a barrage of lawsuits (Compl. 162-164).

Further, Paladini explains in the Complaint how he was personally injured by the Harris Defendants' fabricated breaches, laying the blame on Paladini when really the Harris Defendants were mishandling the accounts and attempting to hide their own breaches of various credit card agreements.

The Complaint further describes how the Harris Defendants negligently failed to discharge their duties and obligations to Paladini in monitoring the daily transactions of Cynergy, providing incorrect and negligent information and accounting functions to Paladini, that he relied

to his detriment upon in obtaining new loans, securing personal guarantees, and executing various ancillary agreements as detailed more fully in the SDNY Action. (Compl. ¶191-200).

Finally, the Complaint details how the Harris Defendants interfered with Paladini's business relations with EVO, which was seeking to acquire the business, forcing the sale price of Cynergy drastically lower. (Compl. ¶204-211).

On August 31, 2012, rather than filing an answer or motion in the District Court in response to the Complaint, the Harris Defendants improperly filed a motion with this Court seeking to "enforce the Court's prior orders releasing and enjoining any claims of the Debtors ... against the defendants" and to enjoin the SDNY Action. (Motion, p. 1.) The Harris Defendants purport that this Court has subject matter jurisdiction over this dispute. They incorrectly argue that all of Paladini's claims are derivative, not direct, and therefore belong to the Debtors. Assuming the claims do belong to the Debtors, the Harris Defendants further purport, those claims have allegedly been released and enjoined through the Orders. The Harris Defendants' motion is improper, lacks merit and wastes the valuable resources of this Court as an attempt to adjudicate disputes between two non-debtor third parties post-confirmation.


## I.    THIS COURT LACKS JURISDICTION OVER THIS PROCEEDING ON THREE SEPARATE GROUNDS

### A.    Paladini's Claims Against the Harris Defendants Were Specifically Carved Out from the Settlement Order

This Court lacks jurisdiction over the proceeding initiated by the Harris Defendants because the claims that Paladini seeks to prosecute in the SDNY Action were specifically carved out from the injunction contained in the Settlement Order and preserved by the Plan. This Court cannot enforce a part of the Settlement Order and the Plan that does not exist. As such, there is simply no basis for this Court to enjoin the SDNY Action.

As explained in the Statement of Facts, the dispute that led to the underlying Settlement was a dispute between the Debtors, the Harris Defendants, and others. Paladini was not a party to that settlement. A review of the June 2, 2010 Settlement Term Sheet Summary of Proposed Terms and Conditions (Ex. A to Dkt. No. 863 (the "Term Sheet")) makes that clear. While Paladini was an officer, director and shareholder of the Debtors, he did not sign on to the Settlement Agreement in any of these capacities or individually.

On December 21, 2010, this Court confirmed the Plan pursuant to the Confirmation Order. As the Harris Defendants point out in their Motion, and as explained, *supra*, the Plan contains certain releases and injunctions for the benefit of the estate. *See* Plan, at Art. XII. Specifically, the Harris Defendants state that this Court "enjoined actions of claims against Moneris" and quotes select language from the Settlement Order. (Moneris Motion, p. 8). However, the Harris Defendants neglect to furnish the Court with the express language that specifically carves out claims (and defenses to claims) that belong to Paladini. Counsel for Paladini was careful to make clear in the Settlement Order that any claims Paladini may wish to prosecute at a later date were specifically carved out from the injunction, including claims relating to the reserves. The entirety of the injunction reads as follows:

> Except as expressly permitted by the Settlement Term Sheet, all parties in interest in the Bankruptcy Cases hereby are forever barred, estopped and permanently enjoined from: (a) commencing or continuing in any manner any action or other proceeding, asserting, prosecuting or otherwise pursuing any claims, rights or causes of action, (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating perfection or enforcing any lien or encumbrance or (d) asserting a setoff, right of subrogation or recoupment of any kind, against a Selling Party; (i) released under this Order, or the Settlement Term Sheet or (ii) related to reserves identified in the Bankruptcy Cases as part of the Settlement Escrowed Funds; provided, however, that the foregoing provisions shall exclude and not apply to (x) ..., (y) ..., and **(z) with respect to clause (ii) in this paragraph 11**

> **related to the reserved identified in the Bankruptcy Cases**
> **should not be construed to preclude Mr. Paladini from**
> **asserting claims or defenses to claims asserted against him**
> **which claims or defenses are indirectly related to the reserves**,
> but do not affect the entitlement to, calculation of, ownership,
> control, or distribution of the reserves, or to preclude any party
> from asserting claims or defenses against Mr. Paladini or against
> any other party in interest that is not a Selling Party.

(Settlement Order ¶ 12.) (emphasis added).  As the emphasized language plainly states, Paladini

may bring personal claims against the Harris Defendants.

In addition, during the Confirmation Hearing on the Plan before Your Honor, counsel for

the Debtors emphasized to the Court that Paladini's personal claims were carved out and not

enjoined:

> MR. DREBSKY:  As to what is in the plan, and I can represent as
> to any claims that are personal to Mr. Paladini, this plan doesn't
> affect it.  *The releases to third parties do not affect any claims*
> *that are personal for Mr. Paladini.*

Transcript of Confirmation Hearing at 24:17-20, *In re CD Liquidation Co. LLC* (December 21,

2010) (No. 09-13038) (emphasis added) (a copy of the relevant pages are attached as Exhibit B).

The Court expressly adopted this representation by Debtors' counsel into the Court's Order

Confirming the Debtors' Plan:

> THE COURT:  And my ruling finding that the plan should be
> confirmed incorporates those representations, Mr. Drebsky,
> namely, that the *injunction does not limit personal claims from*
> *being pursued.*

*Id.* at 64:3-6 (emphasis added).  Accordingly, this Court cannot enforce a Settlement Order that

bars the personal claims that Paladini has brought in the SDNY Action when the Settlement

Order and Confirmation Order both expressly permit those claims.  Therefore, this Court should

deny the Harris Defendants' motion seeking to enjoin the SDNY Action.

**B.    The Bankruptcy Court Lacks Subject Matter Jurisdiction Over This Dispute**

11

The Motion must be denied because the Bankruptcy Court lacks subject matter jurisdiction to consider the Motion. A federal court "presumptively lacks jurisdiction" over a proceeding unless the plaintiff establishes that jurisdiction exists. *In re Porter v. NationsCredit Consumer Discount Co.*, 295 B.R. 529, 535 (Bankr. E.D.P.A. 2003). "This proposition is no less true for bankruptcy courts which, despite their expanded jurisdictional grant found in 28 U.S.C. § 1334, *remain courts of limited jurisdiction*." *Id.* (emphasis added).

### 1.    This Is A Dispute Between Non-Debtor Parties

At the outset, where, as here, the Court is dealing with a dispute between third parties in which the estate of the debtor has no interest, the bankruptcy court lacks jurisdiction over that dispute. *See, e.g., In re McConaghy*, 15 B.R. 480, 481 (Bankr. E.D. Va. 1981); *see also Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010) (bankruptcy courts have no power to hear third-party disputes that are collateral to the bankruptcy). In *McConaghy*, a creditor filed a complaint to enforce a mechanic's lien. The defendants moved to dismiss, arguing that the court lacked subject matter jurisdiction over the complaint. The court determined that because the property on which the mechanic's lien rested had been foreclosed upon and purchased by a third party, the defendant debtor no longer had any interest in the property. Accordingly, the court concluded that it lacked jurisdiction over the dispute because it "lacks jurisdiction to decide disputes between third parties in which the estate of the Debtor has no interest." *Id.* at 481.

Other courts have relied upon *McConaghy* to render similar conclusions regarding subject matter jurisdiction. For example, in *Texas Air Corp. v. Air Line Pilots Ass'n, Int'l*, the court remanded a matter to the district court because the dispute at issue arose between two non-debtors. Even if the moving party were to be victorious on its claims, "the debtor's estate would not be effected because the award would be against [the defendant], a non-debtor, and not [] the debtor." No. H-84-530, 1985 WL 56708, at *2 (S.D. Tex. Jan. 23, 1985). *See also In re*

12

*Guimond Farms, Inc.*, 10 B.R. 177, 179 (Bankr. D. Mass. 1981) ("Third parties cannot confer jurisdiction on the Court in disputes in which the estate is not involved.").

As is clear from the parties involved here, this is not a dispute in which the estate of the Debtors has any interest. Indeed, the three Debtors in the underlying bankruptcy proceeding are CD Liquidation Co., LLC, f/k/a Cynergy Data, LLC, Cynergy Data Holdings, Inc., and CD Liquidation Co. Plus, f/k/a Cynergy Prosperity Plus, LLC. None of these Debtors are named or in any way involved in the dispute now between the Harris Defendants and Paladini, nor is the Liquidation Trustee involved.

In addition, even though "there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b)," for "[j]udicial economy itself does not justify federal jurisdiction." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Accordingly, the Court should dismiss The Harris Defendants' Motion for lack of subject matter jurisdiction because the estate of the debtor has no interest in the dispute.

### 2.     This Is a Non-Core Proceeding Unrelated to the Debtors' Bankruptcy

Furthermore, the Third Circuit has held that the Bankruptcy Court's jurisdiction over a case involving non-debtors is to be determined solely by 28 U.S.C. § 1334(b). *See Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921 (3d Cir. 1990). In order to determine whether a particular proceeding is within the confines of bankruptcy court jurisdiction, the proceeding must fall within one of three general categories. *In re Porter*, 295 B.R. at 535. "First, there are 'core' proceedings, which may be heard and resolved by the bankruptcy court via final judgment." *Id.* (citing 28 U.S.C. § 157(b)(1)). As established by 28 U.S.C. § 1334, core proceedings consist of two sub-categories: "those that 'arise under' and those that 'arise in' the bankruptcy case." *Id.* The Third Circuit has construed section 1334 to state "that a proceeding is core under section

13

157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991) (internal quotations and citation omitted). Therefore, "[i]f the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding." *In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996).

The second category of proceedings involves what are referred to as "non-core" or "related" proceedings. "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *In re Porter*, 295 B.R. 529, 536. The "test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d 984, 994. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

In addition, where, as here, the Bankruptcy Court has confirmed the Plan, "all courts that have addressed the question have ruled that the already-limited 'related to' jurisdiction shrinks considerably. *See, e.g., In re Gen. Media, Inc.*, 335 B.R 66, 73 (declining jurisdiction over action brought by successor-in-interest to Chapter 11 debtor who had brought adversary proceeding to recover from debtor's principal for breach of fiduciary duty and conversion).

Then there exists the final category, which consists of the following:

> Finally, the third category of proceedings are those which fall outside the definition of 'related to' because their outcome would have no effect upon the bankruptcy case. This is generally because their outcome will not affect the property to be administered in the

14

> bankruptcy case, the total assets to be distributed, or the total
> claims to be paid.    Over these 'unrelated' proceedings, a
> bankruptcy court has no subject matter jurisdiction.

*In re Porter*, 295 B.R. 529, 538.

Here the Harris Defendants' request for an injunction does not fall under the first category because the SDNY Action constitutes a lawsuit between two non-debtor parties in a non-bankruptcy forum, and therefore is not brought under title 11 and does not arise under or in a case under title 11.  It is not a "core" proceeding because it does not involve a substantive right provided by Title 11, nor is it a proceeding that could arise only in the context of a bankruptcy case.  Therefore, the action cannot be deemed a "core" proceeding and the Court should dismiss the Harris Defendants' Motion for lack of subject matter jurisdiction.  The District Court is the appropriate forum.

Further, the SDNY Action is not a "non-core" proceeding because it is not "related to" a case under title 11 because the action will not alter, in any way, "the debtor's rights, liabilities, options, or freedom of action."  Indeed, the SDNY Action does not implicate the three debtors to the underlying bankruptcy proceeding or the Liquidation Trustee; nor has Paladini asserted any claims against the debtors in the SDNY Action.  Paladini has sued the Harris Defendants for injuries that Paladini suffered individually.

Moreover, the instant action is brought post-confirmation, where the Court's jurisdiction under well settled precedent is already limited.  Even more so here, where the issues relate to a dispute as between two non-debtor third parties that was specifically contemplated and preserved for adjudication outside of the bankruptcy court, as discussed above. Paladini's claims in the Complaint amount to a two-party dispute arising out of the particularized injuries he suffered as a result of the Harris Defendants' tortious conduct and is entirely independent of the Plan or the rights of the Debtor.  *Presidential Gardens Assocs. v. U.S. ex rel. Sec. of Housing and Urban*

*Dev.*, 175 F.3d 132, 142 (2d Cir. 1999) (because "this suit is, in essence, a dispute between [third parties], [w]e . . . find that, as a result, this suit does not fall within the scope of 28 U.S.C. § 1334. Therefore, Plaintiffs-Appellants' attempt to invoke bankruptcy jurisdiction fails.") (*See* Section III, *supra*).

The Harris Defendants fail to explain or even assert how the litigation of Paladini's claims could alter the Debtor's rights, liabilities, or actions. Paladini's Complaint consists of state law claims asserted solely against a non-debtor and seeks to recover losses incurred by Paladini, not the Debtors - - claims specifically contemplated and carved out from the Settlement Order and Confirmation Order.   In short, there is no "close nexus" to the bankruptcy proceedings, as there must be for "related to" jurisdiction to exist.   *See also Gibson v. Kassover (In re Kassover)*, No. 98-43124, 2008 WL 4845757, at * 3 (Bankr. S.D.N.Y. Oct. 30, 2008) (even though the plan and confirmation order contained retention provisions, it "encompasses only claims that affect the Debtor's estate not third party claims against a nondebtor that have no effect on the estate").

Finally, neither of the Harris Defendants are debtors, and the SDNY Action does not affect the property of the Debtors.   Instead, the SDNY Action seeks damages for harms particularized to Paladini.   As a result, it is apparent that the SDNY Action involves claims that fall outside the definition of "related to" claims and over which this Court lacks jurisdiction. Accordingly, this Court should not enjoin the SDNY Action and should instead dismiss the Harris Defendants' Motion.

## C.    The Harris Defendants' Motion Violates Bankruptcy Rule 7001

The Harris Defendants' Motion requires an adversary proceeding in accordance with Bankruptcy Rule 7001.   The Harris Defendants should have thus sought the relief requested in their Motion by way of an adversary proceeding commenced by filing and service of a summons

and complaint. Because the Harris Defendants failed to proceed as required by law and due process, their Motion must be dismissed.

Bankruptcy Rule 7001 provides that a proceeding to obtain an injunction is required to be commenced by an adversary proceeding. Fed. R. Bankr. P. 7001(7). Pursuant to Bankruptcy Rule 7003, an adversary proceeding is commenced by filing a complaint. Fed. R. Bankr. P. 7003. "Courts have generally required strict compliance with the Federal Rules of Bankruptcy Procedure." *Stacy Fuel & Sales, Inc. v. Ira Phillips, Inc. (In re Stacy)*, 167 B.R. 243, 248 (N.D. Ala. 1994). Accordingly, the Harris Defendants' Motion should be dismissed for failing to request injunctive relief with a summons and complaint. *See, e.g., In re Innovative Communication Co., LLC*, Nos. 06-30008, 06-30009, 2008 WL 4755763, at *5 (D. VI Oct. 27, 2008) ("By requesting injunctive relief by motion before this Court rather than by commencing an adversary proceeding…, [debtor-appellant] ha[d] failed to comply with the requirements of Rule 7001."); *see also In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (holding that a Rule 7001 matter "commenced by motion rather than by complaint will be dismissed"); *In re Stacy*, 167 B.R. at 249 (affirming the bankruptcy court's decision to strike a motion for injunctive relief because "[u]nder the Federal Rules of Bankruptcy Procedure, the relief sought by [the mortgagee] could not have been obtained by motion but rather necessitated the institution of an adversary proceeding").

Furthermore, even if the Harris Defendants had commenced an adversary proceeding, that proceeding would have been subject to immediate dismissal because, as previously articulated, bankruptcy courts lack jurisdiction to hear disputes between non-debtor third parties not in bankruptcy that do not affect the debtor or the estate. *See, e.g., In re McConaghy*, 15 B.R.

480, 481 (Bankr. E.D. Va. 1981); *cf. In re Continental Airlines*, 203 F.3d 203, 214 fn.12 (3d Cir. 2000); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 fn.5 (1995).

## II.    The SDNY Action Consists of Direct, Not Derivative, Claims

### A.    The Claims Against The Harris Defendants Are Personal

"In a bankruptcy proceeding, state law determines whether a right to sue belongs to the debtor or to the individual creditor." *Mediators, Inc. v. Manney (In re The Mediators, Inc.)*, 105 F.3d 822, 825 (2d Cir. 1997). "If the cause of action belongs to the estate, the trustee has exclusive standing to assert it; conversely, if the cause of action belongs solely to the . . . creditors, the trustee has no standing to assert it." *Goldin v. Primavera FamilienStiftung, Tag Assoc. (In re Granite Partners, L.P.)*, 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996). Therefore, a bankruptcy trustee cannot bring a cause of action against a third party when that cause of action belongs to the creditors of the debtor. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985-86 (11th Cir. 1990). "'Congress has not yet indicated even a scintilla of an intention'" to confer such standing on trustees, "'and [  ] such a policy decision must be left to Congress and not to the judiciary.'" *Id.* (quoting *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972)).[4]

Assuming the instant third party (non-debtor) dispute is properly before this Court in the first instance, which Paladini disputes[5], for purposes of this Motion, the allegations stated in the Complaint must be accepted as true. *Bohlen v. United States*, 623 F. Supp. 595 (C.D. Ill. 1985)

---

[4] The court in *E.F. Hutton* noted that Congress "considered and rejected" an opportunity to overrule the decision in *Caplin* (prohibiting trustees from bringing personal third party causes of action) when it drafted the revised bankruptcy code in 1978.

[5] The determination as to whether a claim is personal or derivative is not properly made in the bankruptcy court, especially when there is a suit pending in an appropriate forum that is better equipped to address the direct versus derivative issue. *See A.T. Massey Coal Co. v. Harman Dev. Corp. (In re Sovereign Coal Sales)*, Case No. 7-98-01992, 2000 Bankr. Lexis 2092, at *26 (Bankr. W.D. Va. Nov. 28, 2000) (where the court determined that deciding whether claims of a third party and debtor were direct or derivative was an issue properly decided by state or federal district court - - not bankruptcy court. Only if the claims are derivative does the bankruptcy court have the right to step in. To hold otherwise would "place the cart before the horse.").

(allegations in complaint taken as true for purposes of determining motion to enforce settlement). As provided above, in the SDNY Action, Paladini alleges six separate causes of action: (i) economic duress; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of fiduciary duty; (iv) tortious interference with business relations; (v) general malpractice; and (vi) negligence.

Here the Harris Defendants' erroneously assert, without regard for due process and a fact determination, that the claims at issue are not personal or, alternatively, that if a cause of action could be brought by the corporation, an individual third party cannot pursue them (*see* the Harris Defendants Brief, p. 14). However, this is misdirected and ignores the claims and individualized injuries suffered by Paladini.

Indeed, when a creditor has a claim for injuries particularized to him (even if the debtor was also injured), that cause of action belongs to the injured creditor. For example, in *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085 (2d Cir. 1995), the trustee tried to usurp the individual creditors by bringing a suit for malpractice and negligence, among other claims, against the accountant for the debtor. The Court held "claims predicated upon the distribution of misleading PPMs to investors... are the property of those investors, and may be asserted only by them and to the exclusion of [the trustee]." *Id.* at 1094. The Court further held that, with regard to professional malpractice, "'when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.'" *Id.* (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991). Since the damage suffered by the defendant accountant's deficient due diligence investigation was "passed on to the investors", the investors, and not the trustee, were the only parties with the right to recover on the malpractice claim. *Id.*

Moreover, similarly, in *E.F. Hutton*, the court determined that the bankruptcy trustee did not have standing to bring a cause of action for negligence. The bankruptcy trustee brought a lawsuit against the margin account holder of the debtor for negligence for allowing the debtor to open and maintain a margin account when the debtor was engaging in a Ponzi scheme. *E.F. Hutton*, 901 F.2d 979. The District Court denied defendant's motion to dismiss and motion for summary judgment, determining that the bankruptcy trustee did have standing to bring a cause of action for negligence against a third party who injured the debtor and the debtor's creditors. Nevertheless, the Court certified this issue for direct appeal. The 11th Circuit disagreed, determining that it would have ended the case by granting the defendant's motion to dismiss because the cause of action was personal to the creditors of the estate, not the trustee. Specifically, the debtor's creditors, who were injured customers of the debtor that had purchased securities through the debtor which were subsequently sold by the defendant, were the proper parties to bring a cause of action against the defendant for negligence. The Court distinguished between general causes of action on behalf of all of the debtor's creditors, which the trustee would be entitled to bring, and a personal cause of action on behalf of only some of the debtor's creditors, which is required to be brought by the creditors. It was the creditors' particularized injury that centered standing on the creditors and not the trustee. *E.F. Hutton*, 901 F.2d at 987. *See also Twin Mfg. Co. v. Blum Shapiro & Co., P.C.*, No. 380220, 1992 Conn. Super LEXIS 409 (Conn. Super. Ct. 1992) (where third party purchaser of company brought negligence cause of action against company's accountant arising out of negligently preparing financial statements that purchaser relied on to buy company. Court held that defendant was aware that the purchaser would rely on its work product and it was that work product that induced purchaser to buy company, so cause of action for negligence belonged to third party purchaser); *Bankers Trust Co.*

v. *Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (where officers of the debtor's corporation engaged in fraud, bribery, and perjury and the court held that the damage was caused to the creditor, not the estate); *Hunter v. Citibank*, Case No. 09-02079, Dkt. No. 354, p. 8 (N.D. Cal. July 20, 2010) (holding investors had direct claims for breach of fiduciary duties as trust beneficiaries); *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (right to recover for fraudulent inducement of contract belongs to creditor, not the bankruptcy estate).

Here Paladini is bringing claims for particularized injuries he -- not the Debtors -- suffered.[6] While the causes of action vary, the instant dispute focuses on personal harm inflicted upon Paladini by the Harris Defendants in, amongst other things: (i) the Harris Defendants coercing Paladini into executing the Forbearance Agreement as detailed more fully in the SDNY Action and above, which had the effect of nullifying certain subordination agreements executed by Defendants, subjecting Paladini to additional personal liability (Compl. ¶177-183); (ii) the Harris Defendants' course of conduct in spreading false rumors and concocting breaches that did not exist, in attempting to make Paladini the scapegoat for the Harris Defendants' own misdeeds and mishandling of accounts, all as a means to hide the Harris Defendants' own breaches of various agreements, including Visa and MasterCard agreements that could subject the Harris Defendants to sanctions within the industry (Compl. ¶ 102-109); (iii) the Harris Defendants' negligently failing to discharge their duties and obligations to Paladini in monitoring the daily transactions of Cynergy, providing incorrect and negligent information and accounting functions to Paladini, that he relied upon in obtaining new loans, securing personal guarantees, and executing various ancillary agreements as detailed more fully in the SDNY Action and above, all of which Paladini relied upon to his determinant, in breach of Defendants' position of trust and

---

[6] This court is required to take all "factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). *Bohlen v. United States*, 623 F. Supp. 595 (C.D. Ill. 1985) (allegations in complaint taken as true for purposes of determining motion to enforce settlement).

confidence (Compl. ¶192-200); and (iv) the Harris Defendants interfering with Paladini's business relations with EVO, amongst other things, which was seeking to acquire the business (Compl. ¶205-211).

Like in *E.F. Hutton* and *Hirsch*, these causes of action are direct because Paladini is alleging particularized claims and injuries to him for tort, negligence, malpractice, and interference with business relations, amongst other things. As alleged in the Complaint, as a result of the Harris Defendants' course of conduct, Paladini sustained significant and irreparable personal injury. Among other things, the Harris Defendants performed certain accounting services. As such, they owed a duty to Cynergy and its officers and directors – including Paladini -- to exercise reasonable care and diligence in performing those duties. Paladini reasonably relied upon the Harris Defendants' negligent accounting services to his detriment. Moreover, Paladini was personally harmed as a result of the damage to his reputation and business relationship with EVO, loss of employment, the evisceration of his equity, and personal exposure to additional debt that he was otherwise not responsible for, absent the Harris Defendants' breach of the subordination agreement and Forbearance Agreement.

In addition, by virtue of the Harris Defendants' actions, Paladini was subjected to claims by various creditors for the shortfall attributed with the fire sale for the business and by virtue of certain personal guaranties either entered or extended by virtue of acts and omissions of the Harris Defendants. Paladini's injuries also include damages in connection with several lawsuits that have been brought against him, personally, as a result of the Harris Defendants' conduct. The first two state court lawsuits, as detailed in the Complaint, seek to hold Paladini liable for loans made to Cynergy (Compl. ¶ 162). The bankruptcy trustee for Cynergy also filed a lawsuit against Paladini, in his personal capacity. And one of Cynergy's lenders filed a lawsuit against

Paladini (Compl. ¶163).[7]  Paladini has incurred substantial legal fees and other financial harm as a result of the lawsuits described above. (Compl. ¶164).

Worst of all, Paladini's fourteen-year reputation as an award-winning entrepreneur, successful CEO of a leading payments processing company and person of the highest integrity was damaged beyond repair.  (Compl. ¶167).  The combination of rumors initiated from conversations between the leaders of EVO and Moneris, coupled with the claimed and published shortfall of funds in the amount of $21 million dollars caused irreversible damage to the perception of Paladini in the payments industry. (Compl. ¶168).  Further, in the aftermath of the Forbearance Agreement, the former CFO, Gustavo Ceballos, left the United States, fueling rumors that Cynergy's leaders had somehow siphoned funds for their personal use. (Compl. ¶169).  All of these details served to support an assumption in the public that Paladini, as the former CEO of Cynergy, was responsible for mishandling $21 million of company funds. (Compl. ¶170).

Having suffered such irreparable damage to his reputation, Paladini will undoubtedly never obtain a position with the electronic payments industry again. (Compl. ¶ 171). Immediately following the sale, the only job offered to Paladini was by ComVest, the ultimate purchaser of Cynergy's assets. (Compl. ¶172).  ComVest's engagement of Paladini was strategic. ComVest sought to obtain Paladini's knowledge and expertise in order to guaranty the continuance of Cynergy and thus to protect ComVest's newest asset.  (Compl. ¶ 173). Subsequently, in February 2012, having apparently obtained all of the knowledge ComVest felt it needed to run Cynergy, Paladini was unceremoniously discharged.  (Comp. ¶174).  Now unemployed, Paladini has no alternative but to abandon the industry in which he spent most of his career and pursue opportunities in other industries. (Compl. ¶175).

---

[7] The Trustee and Lender lawsuits were settled and have been dismissed.

The personal and particularized injuries outlined above and in the Complaint were suffered only by Paladini as a result of the Harris Defendants' conduct and could not have been suffered by the Debtors. As such, the Harris Defendants' request for an injunction must fail.

Because the SDNY Action includes only direct claims of Paladini and not derivative claims, the Harris Defendants cannot succeed on the merits of their claims. *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI)*, 409 B.R. 720, 731 (Bankr. D. Del. 2009) (where court held that plaintiff's faulty legal premise that rejection of a lease amounts to a termination was wrong and, therefore, the plaintiff could not be successful on the merits and the injunction had to be denied). The legal basis for the Harris Defendants' request for an injunction is flawed because the causes of action Paladini has brought against the Harris Defendants are direct in nature. Accordingly, the motion must be dismissed.

## III.    The Allegations in the Complaint Are In No Way Similar to Those Brought in the Martillo Action.

The Harris Defendants wrongfully allege that the claims in the Complaint are identical to the claims Paladini brought against Martillo in the United States District Court for the Southern District of New York (the "Martillo Action") and, therefore, because this Court granted a motion for an injunction with regard to the action brought against Martillo, this Court should also enjoin the instant action (The Harris Defendants Motion p. 15). The Harris Defendants' argument is fundamentally flawed because the Martillo Action and the SDNY Action are fundamentally different.

At the outset, the Court will recall that it was the Trustee of the Debtors that sought the injunction in the Martillo Action. The Trustee brought the proceeding by properly commencing an adversary proceeding against Paladini. In essence, the Trustee claimed that Paladini was

seeking to usurp claims for himself that belonged to the Trustee. Paladini had commenced an action seeking recovery of improper distributions to Martillo while the bankruptcy proceedings were ongoing and before the Trustee had filed its own action seeking similar relief from Martillo. The circumstances in the SDNY Action are very different.

Paladini's claims in the Complaint against the Harris Defendants are explicitly protected in the Settlement Order, cited above, which expressly carves out Paladini's causes of action against the Harris Defendants. The language was further ratified in the Plan as discussed above. The Complaint against the Harris Defendants is, therefore, a dispute between two non-debtor parties that is not subject to this Court's jurisdiction.

The Harris Defendants also mischaracterize the SDNY Action, by focusing their arguments on their characterizations of the operative particularized injuries and not on the claims themselves. Paladini's injuries suffered and alleged in the Martillo Action mainly arose out of the improper distribution Martillo received, not the particularized injuries Paladini suffered at the hands of the Harris Defendants' improper conduct further described above. Paladini asserted four causes of action in that case (contribution, improper distribution, unjust enrichment or, in the alternative, constructive trust) that are entirely different from the six causes of action brought in the instant Complaint.

In addition, the Martillo Action was an interlocutory ruling in an adversary proceeding that was ultimately dismissed with prejudicial as part of the Trustee's settlement with Paladini. Moreover, the Martillo matter not only implicated divergent claims and a dispute between the Trustee, not non-debtor third parties as discussed above, the decision as this Court made clear at the original hearing on the Trustee's motion (even assuming the underlying matter was not

dismissed with prejudice), related only to the specific claims/causes of action brought against Martillo, and did not bar Paladini from bringing personal claims.

## CONCLUSION

As detailed above, because this Court lacks subject matter jurisdiction and, in any event, the SDNY Action consists of claims that are personal to Paladini, this Court must disregard the Harris Defendants' improper attempt at forum shopping and deny the Harris Defendants' motion for lack of subject matter jurisdiction.  In the event the Court determines that it has subject matter jurisdiction, it should still dismiss or otherwise deny the Motion because Paladini's claims in the SDNY Action are not derivative.  Paladini's claims are personal to him, were expressly carved out of the Settlement Order (and by implication, the Confirmation Order), and are therefore not enjoined by this Court's prior Orders.  The District Court is the appropriate forum for the dispute between Paladini and the Harris Defendants, non-debtor third parties.  Accordingly, this Court should respectfully defer to the District Court for resolution of the claims between the instant non-debtor parties and deny the Motion.

Dated:  October 10, 2012
       Wilmington, Delaware

ELLIOTT GREENLEAF

ELLIOTT GREENLEAF
Eric M. Sutty
1105 Market Street, Suite 1700
Wilmington, Delaware 19801
Tel: (302) 384-9400
Fax: (302) 384-9399

*-and-*

ASCHETTINO STRUHS LLP
Stephen A. Aschettino (SA4072)(admission
pending)
Naomi D. Johnson (NJ1566)(admission
pending)
1500 Broadway, 21st Floor
New York, New York 10036
Tel: (212) 354-7600
Fax: (866) 260-5527

*Attorneys for Marcelo Paladini*