IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CD LIQUIDATION CO., LLC, f/k/a | ) | Case No. 09-13038(KG) |
| CYNERGY DATA, LLC, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Re Dkt No. 1549** |

**MEMORANDUM OPINION[1] GRANTING THE MOTION OF MONERIS
SOLUTIONS, INC. AND BMO HARRIS BANK N.A. AND (1) ENFORCING
(A) THE ORDER APPROVING THAT CERTAIN SETTLEMENT REGARDING
RECONCILIATION OF AMOUNTS RELATED TO THE ROLLING RESERVE
FUND, (B) THE ORDER CONFIRMING THE JOINT PLAN OF LIQUIDATION
OF CD LIQUIDATION CO., LLC, CD LIQUIDATION CO. PLUS, LLC, AND
CYNERGY DATA HOLDINGS, INC. AND (C) COMPLIANCE WITH
THE JOINT PLAN OF LIQUIDATION OF DEBTORS
AND (2) ENJOINING MARCELO PALADINI**

The Court has carefully considered the Motion of Moneris Solutions, Inc. ("Moneris Solutions") for itself and in its capacity as agent for BMO Harris Bank N.A. ("Harris") (together with Moneris Solutions, "Moneris") for entry of an order to (1) enforce (A) this Court's Order Approving, Pursuant to Section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, the Settlement Between and Among the Debtors, Harris N.A., Moneris Solutions, Inc., Term B Parties and Second Lien Parties, Term A Parties, Cynergy Holdings, LLC and Cynergy Data LLC, Regarding Reconciliation of Amounts Related to the Rolling Reserve Fund and for Certain Related Relief (the "Settlement Order")

---

[1] This Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[D.I. 935], (B) this Court's Order Confirming Joint Plan of Liquidation of CD Liquidation Co., LLC, CD Liquidation Co. Plus, LLC, and Cynergy Data Holdings, Inc. (the "Confirmation Order") [D.I. 1202] and (c) the Joint Plan of Liquidation of Debtors (the "Plan") [D.I. 1190] and (2) enjoin Marcelo Paladini ("Paladini") (the "Motion") (D.I. 1549) filed in these cases and the opposition of Paladini; and this Court having considered the record of the proceedings in the Chapter 11 cases and the information placed before it, and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that these are core proceedings pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and sufficient notice of the Motion having been given, the Court finds and concludes as set forth below.

## FINDINGS OF FACT

1. CD Liquidation Trust is successor-in-interest to the bankruptcy estates of Cynergy Data Holdings, Inc., CD Liquidation Co. Plus, LLC (f/k/a Cynergy Prosperity Plus, LLC), CD Liquidation Co., LLC (f/k/a Cynergy Data LLC) ("Cynergy Data" and collectively, "Cynergy" or the "Debtors") created pursuant to the Plan. Cynergy provided credit and debit card payment processing services for merchants, enabling merchants to receive payments when customers paid by credit card.

2. Paladini was, at the commencement of the Debtors' chapter 11 cases, the Chief Executive Officer and ultimate majority shareholder of the Debtors. Cynergy Data Holdings,

Inc. was the parent of Cynergy Data LLC and Cynergy Prosperity Plus, LLC was the subsidiary of Cynergy Data LLC.

3. On July 2, 2012, Paladini commenced an action in the United States District Court for the Southern District of New York, *Paladini v. BMO Harris Bank, N.A., et ano.*, No. 12-cv-5178 (the "New York Action").

**The Forbearance Agreement**

4. Moneris, at the request of various parties including Cynergy Data and its lenders, entered into a Forbearance Agreement, dated as of July 24, 2009, regarding Debtors' Financing Arrangements and the Harris Documents (the "Forbearance Agreement,"). Moneris agreed to forbear from exercising its rights to setoff and recoup the approximately $21 million of missing merchant reserve funds subject to certain terms and conditions.

5. In the Forbearance Agreement, the Debtors and Paladini, as Guarantor, acknowledged that CynergyData was obligated to pay the unfunded merchant Rolling Reserves into the Harris Reserve Account and that Events of Default occurred under the Harris Documents, including the BIN Agreement and Merchant Agreements.

The Debtors and Paladini further acknowledged that Defaults Have Occurred Under the Loan Documents and the Harris Documents. (New York Action Complaint, Ex. F, p. 16) ("Compl.").

The Debtors and Paladini, moreover, expressly acknowledged that they did not execute the Forbearance Agreement under any duress. (Compl. Ex. F ¶ 47.)

6.      On September 1, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

**The Settlement Order**

7.      On September 13, 2010, this Court entered the Settlement Order [D.I. 935]. The Settlement Order approved the terms and conditions of a Settlement Term Sheet, as modified, supplemented and amended by the Settlement Order (the "Settlement Term Sheet"), by and among the Debtors, Harris and Moneris Solutions, and others (collectively, the "Settling Parties").

8.      Pursuant to the Settlement Term Sheet, the Debtors and other Settling Parties released any and all claims against Moneris arising before the date of the Settlement Order except for specified claims relating to future distribution of escrowed funds.

9.      The Settlement Order expressly incorporates the Settlement Term Sheet by reference and provides that the Settlement Term Sheet is expressly incorporated into the Plan. (Settlement Order ¶ 21; Plan, Article XII § R.)

10.     The Debtors, pursuant to the Settlement Term Sheet and Settlement Order, released any and all claims against Moneris "related in any way to the Settlement Term Sheet, Settlement Escrowed Funds, BIN Sponsor Agreement or the Debtors." Among other things, the Settlement Order provides that:

> Each of the Debtors on behalf of themselves and their estates created in the Bankruptcy Cases pursuant to section 541 of the Bankruptcy Code, the Term A Parties, the Term B Parties, and Garrison Opportunities, do thereby and under the Settlement

> Term Sheet waive and release any and all claims (to be interpreted in the broadest manner possible), obligations, suits, judgments damages, rights, causes of action, liabilities, defenses, counterclaims or offsets and/or allegations whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, against Moneris related in any way to the Settlement Term Sheet, Settlement Escrowed Funds, BIN Sponsor Agreement or the Debtors, except with respect to: (i) claims as set forth in this Settlement Term Sheet, (ii) claims for breach under the Settlement Term Sheet and (iii) claims for disgorgement by Moneris under the Stipulation and the Settlement Term Sheet . . . .

(Settlement Order ¶ 12.)

11. This Court enjoined actions for claims against Moneris released under the Settlement Term Sheet, Settlement Order or otherwise related to reserves as follows:

> Except as expressly permitted by the Settlement Term Sheet, all parties in interest in the Bankruptcy Cases hereby are forever barred, estopped and permanently enjoined from: (a) commencing or continuing in any manner any action or other proceeding, asserting, prosecuting or otherwise pursuing any claims, rights or causes of action, (b) enforcing, attaching collecting or recovering in any manner any judgment, award, decree of order, (c) creating perfection or enforcing any lien or encumbrance or (d) asserting a setoff, right of subrogation or recoupment of any kind, against a Settling Party; (I) released under this Order, or the Settlement Term Sheet or (ii) related to reserves identified in the Bankruptcy Cases as part of the Settlement Escrowed Funds . . . .

(*Id.*¶ 11.) Moneris is defined to include Harris. Paladini preserved claims and defenses belonging to himself individually "indirectly related to the reserves, but [that] do not affect the entitlement to, calculation of, ownership, control or distribution of the reserves." (*Id.* at

¶ 11.) This preservation only applies to direct claims, if any, of Paladini against Moneris, not derivative claims.

12.  The Settlement Order and the releases granted by the Debtors in favor of Moneris are binding on the Liquidation Trustee pursuant to the Settlement Order as follows:

> This Order is binding upon the Debtors, all creditors of the Debtors, and any trustees that may be appointed in these chapter 11 cases or any trustees appointed in any subsequent proceedings under chapter 7 of the Bankruptcy Code relating to the Debtors, and all other parties-in-interest.

(*Id.* ¶ 22.)

13.  The Court retained "jurisdiction to the full extent permitted by law to determine any disputes concerning or relating to the Settlement." (*Id.* ¶ 24.)

**The Plan And Confirmation Order**

14.  The Court confirmed the Plan [D.I. 1190] pursuant to the Confirmation Order, dated December 21, 2010. [D.I. 1202.]

15.  The Liquidation Trustee, Charles M. Moore, was appointed pursuant to the Plan. He exercises the exclusive right to assert causes of action on the Debtors' behalf. (Plan at pp.8, 18.) The Plan incorporates the releases set forth in the Settlement Term Sheet and Settlement Order of any claims by the Debtors against Moneris and the permanent injunction provided therein. (Plan, Article XII §R.) The Plan specifies that all injunctions or stays contained in the Settlement Order, Plan or Confirmation Order, remain in full force and effect in accordance with their terms.(Plan, Article XII §O.) The Confirmation Order

provides that prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder are binding upon the Liquidation Trustee. (Confirmation Order ¶ 16.)

16. The Court retained exclusive jurisdiction over all claims brought on the Debtors' behalf. (Plan, Article XI.) The Court additionally retained jurisdiction to enforce all orders, and specifically all injunctions and releases, entered in connection with the bankruptcy. *(Id.*; Confirmation Order ¶ 17.)

**Paladini's Lawsuit Against Moneris In New York**

17. In the New York Action, Paladini alleges that Moneris's actions led to the Debtors' bankruptcy filings by threatening to suspend their funding unless they acceded to Moneris' demand to fund the $21 million Rolling Reserve. Paladini additionally alleges Moneris' negligence and "malpractice" in improperly performing the daily reconciliation of transfers between Cynergy Data and Moneris and failing to maintain the Rolling Reserves in a Harris Account contributed to the Debtors' bankruptcy. (Compl. ¶¶ 212-230.) Paladini further alleges that Moneris disrupted a potential sale of the Debtors by exchanging information with the potential purchaser and by failing itself to bid. (*Id.* ¶¶ 87-94.)

18. Paladini claims that, as a result of the Debtors' bankruptcy, he suffered personal harm in several respects: first, the Debtors' bankruptcy destroyed the value of his shares; second, the bankruptcy and his role as the Debtors' guarantor caused him to be named a defendant in four creditor lawsuits; third, the sale of the Debtors for less than its

indebtedness exposed Paladini to liability as the Debtors' guarantor; and fourth, an "assumption in the public" that Paladini was responsible for mishandling $21 million of the Debtors' funds caused harm to his professional reputation. (*Id.* ¶¶ 11-13.)

19.     Paladini alleges causes of action against Moneris for economic duress, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, tortious interference with business relations, general malpractice and negligence. (*Id.* ¶ 1.)

## THE COURT'S JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Court has jurisdiction to enforce its orders and it retained jurisdiction over claims belonging to the Debtors. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[t]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders . . . and it explicitly retained jurisdiction to enforce its injunctions"); *see also In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010) ("Enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction").

## CONCLUSIONS OF LAW

**Paladini's Claims are Derivative**

A.     A claim is derivative when (1) the company suffered the alleged harm and (2) the company would receive the benefit of the recovery or other remedy. *Tooley v.*

*Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). The fundamental question is "has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *Id.* Paladini cannot demonstrate an independent harm to himself. His claims are derivative. *See, e.g., Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) ("In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large").

**Sale and Loss in Value**

B.  Paladini alleges that Moneris' actions caused the Debtors' sale for $40 million less than the amounts they owed to their lenders and as a result, "Paladini's equity interest – valued at over $200MM just months before – was completely destroyed."(Compl. ¶¶ 159-160.) Paladini explains that this harm is "particularized to him because . . . a portion of the equity of Cynergy belonged to Paladini, personally, as majority shareholder."(Compl. ¶ 188.)

C.  The companies at issue here were all organized under the laws of Delaware and, therefore, the Court is applying Delaware law. *In re Sunrise Secs. Litig.*, 916 F.2d 874, 881-82 (3d Cir. 1990).

D.  Loss in share value – is a "classic derivative harm" because "[i]t flows from a harm to the corporation."*In re CD Liquidation Co., LLC*, 462 B.R. 124, 132; (Bankr. D. Del. Nov. 2, 2011) *see also Ravenswood Inv. Co., L.P. v. Winmill*, 2011 WL 2176478 at *5 (Del. Ch. May 31, 2011) ("The Complaint identifies no harm that the [share] buybacks might have caused to the individual shareholders . . .under *Tooley*, this is a purely derivative

claim").

E.   The Cynergy sale affected the value of Paladini's shares no more or less than the value of other stockholders' shares and the claims of Cynergy's creditors. Any harm to Paladini arising out of his status as a shareholder is therefore derivative of harm to the Debtors.

**Economic Duress**

F.   The economic duress claim, for which Paladini seeks monetary damages, (Compl. ¶ 183), does not state a cause of action as a matter of law because economic duress is not a cause of action, but rather a theory of recovery for rescission of a contract. *See Bank Leumi Trust Co. v. D'Evori Int'l, Inc.*, 558 N.Y.S.2d 909, 914 (1st Dep't 1990) ("[W]e do not believe that the doctrine of economic duress, which is traditionally used as a defense to an action, has any place in a cause of action seeking money damages".)

**Exposure To Lawsuits By Cynergy's Creditors**

G.   Paladini alleges that Moneris' conduct led to the Debtors' bankruptcy and sale for less than the amount of its indebtedness leading to Paladini being named as a defendant in four lawsuits.

H.   This claim is derivative. Paladini cannot prevail without showing an injury to the company, namely, filing for bankruptcy protection and being sold for less than the amount of its indebtedness. *Tooley* applies.

**Paladini's Guaranty**

I. Paladini claims the Cynergy sale exposed him to substantial liability by virtue of his personal guaranty of Cynergy's debts. (Compl. ¶ 165.) Paladini also alleges that by requiring that approximately $21MM of the sale proceeds be allocated to the Rolling Reserves, Moneris exposed him to further liability on his guaranty. (Compl. ¶ 166.)

J. Paladini's exposure by guaranty claim is derivative of the Debtors' principal obligations and defaults. Paladini does not allege that Moneris breached any agreement with him, but that Moneris' conduct "disrupted the Cynergy asset sale and resulted in a sale for approximately $40 MM less than the amount owed to the Cynergy Lenders."(Compl. ¶ 187.)

K. Paladini's obligations under the guaranty were not triggered until the Debtors, as principal obligors, defaulted. Paladini does not have an independent cause of action against Moneris. He would first have to prove injury to the Debtors to prevail. Therefore the claims are derivative. *In re CD Liquidation Co., LLC*, 462 B.R. at 133, citing, *e.g., Amusement Indus., Inc. v. Stern*, 2011 WL 2976199, at *6 (S.D.N.Y. July 26, 2011).

**The Alleged Harm To Paladini's Professional Reputation**

L. Paladini alleges that Moneris' conduct injured his professional reputation by causing a prospective buyer to withdraw its bid to acquire the Debtors which lowered the sale price. (Compl. ¶ 210.)

M. The primary harm of the tortious interference claim is harm to the Debtors, not Paladini, and the claim is Debtors' to assert.

## **THE DERIVATIVE CLAIMS ARE ENJOINED**

N. Paladini's claims, in the New York Action are derivative and belong to the Debtors. *In re CD Liquidation Co., LLC*, 462 B.R. at 130; *see also In re RNI Wind Down Corp.*, 348 B.R. 286, 292 (Bankr. D. Del. 2006).

O. The Debtors, and by succession the Liquidation Trustee, released all such claims against Moneris pursuant to the Settlement Term Sheet, the Settlement Order, the Plan and the Confirmation Order.

P. The Court enjoined the prosecution of all such released claims pursuant to the Settlement Order, the Plan and the Confirmation Order and will uphold and enforce the injunctions and releases in confirmation plans. *See In re SemCrude L.P.*, 2011 WL 1981713, at *8 (Bankr. D. Del. Oct. 7, 2011) (granting motion to enforce confirmation order enjoining state court suit brought by debtor's limited partners against debtor's former CEO and debtor's auditor); *In re Charter Commc's*, 2012 WL 502764, at *4-*5 (enforcing the releases in bankruptcy plan against plaintiffs in securities class action litigation).

Accordingly, this Court will issue an Order upholding and enforcing its prior orders releasing and enjoining the claims Paladini asserts against Moneris in the New York Action and, therefore, enjoining Paladini from prosecuting the New York Action.

Dated: December 28, 2012

*[signature]*
KEVIN GROSS, U.S.B.J.